# BALTIMORE & OHIO SOUTHWESTERN RAILWAY COMPANY v. VOIGT.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 88. Argued December 20, 21, 1899. — Decided February 26, 1900.

The railway company, being engaged as common carrier in the business of transporting passengers and freight for hire, entered into a contract in writing with an express company authorized by law to do and actually doing the business known as express business, by which contract the railroad company agreed, solely upon the considerations and terms hereinafter mentioned, to furnish for the exclusive use of such express company, in the conduct of its said express business over said railway company's lines, certain privileges, facilities and express cars to be used and employed exclusively by said express company in the conduct of such express business; and to transport said cars and contents, consisting of express matter, in its fast passenger trains, together with one or more persons in charge of said express matter, known as express messengers, for that purpose to be allowed to ride in said express cars; to transport such express messengers for the purposes and under the circumstances aforesaid free of charge. And by said contract it was agreed on the part of said express company to pay said railroad company for such privileges and facilities and for the furnishing and use of said express car or cars, and for such transportation thereof, a compensation named in said contract; and by which contract it was further agreed by the express company to protect the railroad company and hold it harmless from all liability it might be under to employés of the express company for any injuries sustained by them while being so transported by said railroad company, whether the injuries were caused by negligence of the railroad company or its employés or otherwise. Voigt made application to said express company in writing to be employed by it as express messenger on the railroad of a company, between which and such express company a contract as aforesaid existed, and such applicant, pursuant to his application, was employed by the express company under a contract in writing signed by him and it, whereby it was agreed between him and the express company that he did assume the risk of all accident or injury he might sustain in the course of said employment, whether occasioned by negligence or otherwise, and did undertake and agree to indemnify and hold harmless said express company from any and all claims that might be made against it arising out of any claim or recovery on his part for any damages sustained by him by reason of any injury, whether such damage resulted from negligence or otherwise, and to pay said express company on demand any sum which it might be com-

pelled to pay in consequence of any such claim, and to execute and deliver to said railroad company a good and sufficient release under his hand and seal of all claims and demands and causes of action arising out of or in any manner connected with said employment, and expressly ratified the agreement aforesaid between said express company and said railroad company. *Held,* that Voigt, occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies, was not a passenger within the meaning of the case of *Railroad Company* v. *Lockwood,* 17 Wall. 357; that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger; and that such a contract did not contravene public policy.

THE following statement and question were certified to this court by the Judges of the Circuit Court of Appeals for the Sixth Circuit:

"This was an action brought by William Voigt, the defendant in error, against the Baltimore and Ohio Southwestern Railway Company, the plaintiff in error, to recover for damages sustained by him in consequence of a collision between two trains of the plaintiff in error, upon one of which, a fast passenger train, he was riding at the time of the accident. He was an express messenger riding in a car which was set apart for the use of the United States Express Company, and occupied by that company for its purposes under a contract between the express company and the railway company. The plaintiff alleged in his petition that he was travelling as a passenger for hire on one of the defendant's trains, being an express messenger on said train. In fact, he was upon said train only by virtue of his employment as express messenger of his company and the above-mentioned contract between his company and the railway company. The answer of the railway company set up two grounds of defence. The first admitted that Voigt was an express messenger on its train, but denied that he was travelling as a passenger for hire. The railway company also admitted that on the occasion of the injury complained of, the train on which he was riding came into collision with another of its trains, and that in the collision Voigt sustained injuries. The second ground of defence, inasmuch as it sets out the specific matter in controversy, is here set forth in detail:

"'For a second and separate defence the railway company answered that on the day in question it was, and had for a long time prior thereto been, a corporation under the laws of Ohio engaged in the operation of its railroad from Cincinnati to St. Louis and other places, and was so engaged at the time of the collision referred to, and that on the 1st day of March, 1895, it entered into a contract with the United States Express Company, a joint stock company duly authorized by law to carry on the express business and to enter into such contract, and that by said contract it was agreed between the express company and the railway company, among other things, that the railway company would furnish for the express company, on the railway company's line between Cincinnati and St. Louis, cars adapted to the carriage of such express matter as the express company desired to have transported over said line, and that it was part of said contract that one or more employés of said express company should accompany said goods in said cars over the said line of said railroad, and for such purpose should be transported in said cars free of charge; and that it was further provided in said contract that the express company should protect the railway company and hold it harmless from all liability the railway company might be under to employés of the express company for injury they might sustain while being transported by the railway company over its line for the purpose aforesaid, whether the injuries were caused by negligence of the railway company or its employés or otherwise. The railway company further averred that, pursuant to said contract with the express company, it placed upon its line of railroad for said express company certain cars known as express cars, and that it was hauling one of said cars on one of its trains on the 30th of December, 1895, at the time said collision occurred, and that prior to the time of the accident Voigt had made application to the express company in writing for employment by it as an express messenger, and that in pursuance to said application he was, prior to and at the time of the collision, employed by the express company under a contract in writing between him and it, by the terms whereof he did assume the risk of all accidents and

injuries that he might sustain in the course of his said employ-
ment, whether occasioned by negligence and whether resulting
in death or otherwise, and did undertake and agree to indem-
nify and hold harmless the said express company from any
and all claims that might be made against it arising out of
any claim or recovery on his part for any damages sustained
by him by reason of any injury, whether such injury resulted
from negligence or otherwise, and did agree to pay to said
express company on demand any sum which it might be com-
pelled to pay in consequence of any such claim, and did agree
to execute and deliver to the corporation operating the trans-
portation line (in this instance the railway company), upon
which he might be injured, a good and sufficient release under
his hand and seal of all claims, demands and causes of action
arising out of any such injury or connected with or resulting
therefrom, and did ratify all agreements made by the express
company with any transportation line (in this instance said
railway company), in which said express company had agreed
or might agree that the employes of said express company
should have no cause of action for injuries sustained in the
course of their employment upon the line of such transporta-
tion company; and that the said Voigt did further agree to be
bound by each and every of the agreements above mentioned
as fully as if he were a party thereto. He did agree that his
contract with the express company should inure to the benefit
of any corporation upon whose line said express company
should forward merchandise (in this instance the said railway
company), as fully and completely as if made directly with the
corporation. In said defence it was further set forth that at the
time the plaintiff sustained the injuries for which the suit was
brought he was in an express car being transported by the rail-
way company over its line from Cincinnati to St. Louis, pursu-
ant to said contract between said express company and the
railway company, and that said Voigt was at the time of the
collision upon said car in pursuance to his contract with said
express company and not otherwise.'

"To this second defence a demurrer was interposed by Voigt
on the ground that the allegations therein did not constitute a

defence to the action.   Upon the hearing of this demurrer it
was sustained, and an entry was made of record finding the de-
murrer well taken.  The opinion of the court sustaining the
demurrer is published in 79 Fed. Rep. 560.   The decision of the
court went upon the ground that although Voigt was an ex-
press messenger riding upon an express car in the circumstances
stated, he was a passenger for hire and entitled to the rights
accorded by law to ordinary passengers travelling by a train of
a common carrier, and further that it was not competent for
the railway company to absolve itself from the duties which
rest upon a common carrier in reference to its passengers.   A
stipulation in writing was filed waiving a trial by jury, and the
case was tried by the court.   The finding of the issues was in
favor of the plaintiff and the damages were assessed at the sum
of $6,000.00, and judgment was thereupon entered that the
plaintiff recover that sum with costs.   The defendant brings the
case here on writ of error, and assigns errors, the substance of
which is involved in the ruling of the court below sustaining the
demurrer to the second defence of the answer of the defendant,
and the controversy here involves the question whether in point
of law a messenger of an express company, occupying a car of
a railway company assigned to an express company for the
prosecution of its business under a contract fixing the relations
of the railway company and the express company, which, for
the consideration shown by the contract, absolves the railway
company from the consequence of its negligence to the express
company and its employés, and to which the employé agrees,
upon entering the service of the express company, stands in
the ordinary relation of a common carrier of passengers for
hire to the employé of the express company.   The rule is
undoubtedly well settled that a railway company standing in
the relation of a common carrier to a passenger for hire cannot
absolve itself for liability from the consequences of its negli-
gence in carriage, but the members of the court are in doubt
whether the defendant in error comes within the rule above
mentioned, and, therefore, upon the foregoing statement of
fact it is ordered that the following question be certified to the
Supreme Court of the United States for its instruction :

### " *Question.*

" A railroad company, engaged as common carrier in the business of transporting passengers and freight for hire, entered into a contract in writing with an express company authorized by law to do and actually doing the business known as express business, by which contract the railroad company agreed, solely upon the considerations and terms hereinafter mentioned, to furnish for the exclusive use of such express company, in the conduct of its said express business over said railway company's lines, certain privileges, facilities and express cars to be used and employed exclusively by said express company in the conduct of such express business ; and to transport said cars and contents, consisting of express matter, in its fast passenger trains, together with one or more persons in charge of said express matter, known as express messengers, for that purpose to be allowed to ride in said express cars; to transport such express messengers for the purposes and under the circumstances aforesaid free of charge.   And by said contract it was agreed on the part of said express company to pay said railroad company for such privileges and facilities and for the furnishing and use of said express car or cars, and for such transportation thereof, a compensation named in said contract ; and by which contract it was further agreed by the express company to protect the railroad company and hold it harmless from all liability it might be under to employés of the express company for any injuries sustained by them while being so transported by said railroad company, whether the injuries were caused by negligence of the railroad company or its employés or otherwise.   A person made application to said express company in writing to be employed by it as express messenger on the railroad of a company, between which and such express company a contract as aforesaid existed, and such applicant, pursuant to the application aforesaid, was employed by said express company under a contract in writing signed by him and it, whereby it was agreed between him and such express company that he did assume the risk of all accident or injury he might sustain in the course of said employment, whether occasioned by negligence or otherwise, and did undertake and agree to indemnify

and hold harmless said express company from any and all claims that might be made against it arising out of any claim or recovery on his part for any damages sustained by him by reason of any injury, whether such damage resulted from negligence or otherwise, and to pay said express company on demand any sum which it might be compelled to pay in consequence of any such claim, and to execute and deliver to said railroad company a good and sufficient release under his hand and seal of all claims and demands and causes of action arising out of or in any manner connected with said employment, and expressly ratified the agreement aforesaid between said express company and said railroad company.

" Does said railroad company assume, toward such express messenger while being carried in the course of his said employment in one of said express cars attached to a passenger train of said railroad company, pursuant to the contracts aforesaid, the ordinary liability of a common carrier of passengers for hire so as to render said railroad company liable as such to said express messenger, notwithstanding the contracts aforesaid, for injuries he might sustain by reason of a collision between the train to which said express car is attached and another train of said railroad company, caused by the negligence of employés of the railroad company ? "

*Mr. Edward Colston* for plaintiff in error. *Mr. Judson Harmon, Mr. A. W. Goldsmith* and *Mr. George Hoadly, Jr.*, were on his brief.

*Mr. Charles M. Cist* for defendant in error. *Mr. Edgar W. Cist* was on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The question we are asked to answer is, whether William Voigt, the defendant in error, can avoid his agreement that the railroad company should not be responsible to him for injuries received while occupying an express car as a messenger, in the manner and circumstances heretofore stated, by

invoking that principle of public policy which has been held to forbid a common carrier of passengers for hire to contract against responsibility for negligence?

The Circuit Judge thought the case could not be distinguished from the case of *Railroad Co.* v. *Lockwood,* 17 Wall. 357, where a recovery was maintained by a drover injured whilst travelling on a stock train of the New York Central Railroad Company proceeding from Buffalo to Albany, on a pass which certified that he had shipped sufficient stock to give him a right to pass free to Albany, but which provided that the acceptance of the pass was to be considered à waiver of all claims for damages or injuries received on the train. This court held that a drover travelling on a pass, for the purpose of taking care of his stock on the train, is a passenger for hire, and that it is not lawful for a common carrier of such passenger to stipulate for exemption from responsibility for the negligence of himself or his servants. This case has been frequently followed, and it may be regarded as establishing a settled rule of policy. *Railway Co.* v. *Stevens,* 95 U. S. 655; *Liverpool Steam Co.* v. *Phœnix Ins. Co.,* 129 U. S. 397.

The principles declared in those cases are salutary, and we have no disposition to depart from them. At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. It was well said by Sir George Jessel, M. R., in *Printing &c. Co.* v. *Sampson,* L. R. 19 Eq. 465: "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public

policy to consider — that you are not lightly to interfere with this freedom of contract."

Upon what principle, then, did the cases relied on proceed, and are they applicable to the present one? They were mainly two. First, the importance which the law justly attaches to human life and personal safety, and which therefore forbids the relaxation of care in the transportation of passengers which might be occasioned by stipulations relieving the carrier from responsibility. This principle was thus stated by Mr. Justice Bradley in the opinion of the court in the case of *Railroad Co.* v. *Lockwood :* "In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties — an object essential to the welfare of every civilized community. Hence the common law rule which charged the common carrier as an insurer. Why charge him as such? Plainly for the purpose of raising the most stringent motive for the exercise of carefulness and fidelity in his trust. In regard to passengers the highest degree of carefulness and diligence is expressly exacted. In the one case the securing of the most exact diligence and fidelity underlies the law, and is the reason for it; in the other, it is directly and absolutely prescribed by the law. It is obvious, therefore, that if a carrier stipulate not to be bound to the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put aside the essential duties of his employment. And to assert that he may do so seems almost a contradiction in terms."

The second fundamental proposition relied on to nullify contracts to relieve common carriers from liability for losses or injuries caused by their negligence is based on the position of advantage which is possessed by companies exercising the business of common carriers over those who are compelled to deal with them. And again we may properly quote a passage from the opinion in the *Lockwood case* as a forcible statement of the situation:

"The carrier and his customer do not stand on a footing of equality. The latter is only one individual of a million.

He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers, rather, to accept any bill of lading, or sign any paper the carrier may present; often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this, or abandon his business. . . . If the customer had any real freedom of choice, if he had a reasonable or practicable alternative, and if the employment of the carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment, then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair, and no concern of the public. But the condition of things is entirely different, and especially so under the modified arrangements which the carrying trade has assumed. The business is almost concentrated in a few powerful corporations, whose position in the body politic enables them to control it. They do, in fact, control it, and impose such conditions upon travel and transportation as they see fit, which the public is compelled to accept. These circumstances furnish an additional argument, if any were needed, to show that the conditions imposed by common carriers ought not to be adverse, to say the least, to the dictates of public policy and morality."

Upon these principles we think the law of to-day may be fairly stated as follows : 1. That exemptions claimed by carriers must be reasonable and just, otherwise they will be regarded as extorted from the customers by duress of circumstances, and therefore not binding. 2. That all attempts of carriers, by general notices or special contract, to escape from liability for losses to shippers, or injuries to passengers, resulting from want of care or faithfulness, cannot be regarded as reasonable and just, but as contrary to a sound public policy, and therefore invalid.

But are these principles, well considered and useful as they are, decisive of, or indeed applicable to, the facts presented for judgment in the present case?

We have here to consider not the case of an individual

shipper or passenger, dealing, at a disadvantage, with a powerful corporation, but that of a permanent arrangement between two corporations embracing within its sphere of operation a large part of the transportation business of the entire country. We need not, in this inquiry, examine the nature of the business of an express company, or rehearse the particular services it renders the public. That has been done, sufficiently for our present purpose, in the *Express cases,* 117 U. S. 1, and from the opinion in that case we shall make some pertinent extracts:

"The express business has grown to an enormous size, and is carried on all over the United States and in Canada, and has been extended to Europe and the West Indies. It has become a public necessity, and ranks in importance with the mails and the telegraph. It employs for the purpose of transportation all the important railroads in the United States, and a new road is rarely opened to the public without being equipped in some form with express facilities. It is used in almost every conceivable way, and for almost every conceivable purpose, by the people and by the Government. All have become accustomed to it, and it cannot be taken away without breaking up many of the long settled habits of business, and interfering materially with the conveniences of social life.

\*          \*          \*          \*          \*

" When the business began, railroads were in their infancy. They were few in number, and for comparatively short distances. There has never been a time, however, since the express business was started that it has not been encouraged by the railroad companies, and it is no doubt true that no railroad company in the United States has ever refused to transport express matter for the public, upon the application of some express company, of some form of legal constitution. Every railway company has recognized the right of the public to demand transportation by the railway facilities which the public has permitted to be created of that class of matter which is known as express matter. Express companies undoubtedly have invested their capital and built up their busi-

ness in the hope and expectation of securing and keeping for themselves such railway facilities as they needed, and railroad companies have likewise relied upon the express business as one of their important sources of income.

"But it is neither averred in the bills, nor shown by the testimony, that any railroad company in the United States has ever held itself out as a common carrier of express companies, that is to say, as a common carrier of common carriers. On the contrary, it has been shown, and in fact it was conceded upon the argument, that, down to the time of bringing these suits, no railroad company had taken an express company on its road for business except under some special contract, verbal or written, and generally written, in which the rights and duties of the respective parties were carefully fixed and defined.  These contracts, as is shown by those in this record, vary necessarily in their details, according to the varying circumstances of each particular case, and according to the judgment and discretion of the parties immediately concerned.  It also appears that, with very few exceptions, only one express company has been allowed by a railroad company to do business on its road at the same time.  . . .

"The reason is obvious why special contracts in reference to this business are necessary.  The transportation required is of a kind which must, if possible, be had for the most part on passenger trains.  It requires not only speed, but reasonable certainty as to the quantity that will be carried at any one time.  As the things carried are to be kept in the personal custody of the messenger or other employé of the express company, it is important that a certain amount of car space should be specially set apart for the business, and that this should, as far as practicable, be put in the exclusive possession of the expressman in charge.  As the business to be done is 'express,' it implies access to the train for loading at the latest, and for unloading at the earliest convenient moment. All this is entirely inconsistent with the idea of an express business on passenger trains free to all express carriers.  Railroad companies are by law carriers of both persons and property. Passenger trains have, from the beginning, been provided for

the transportation primarily of passengers and their baggage. This must be done with reasonable promptness and with reasonable comfort to the passenger. The express business on passenger trains is in a degree subordinate to the passenger business, and it is consequently the duty of a railroad company in arranging for the express to see that there is as little interference as possible with the wants of the passengers. This implies a special understanding and agreement as to the amount of car space that will be afforded, and the conditions on which it is to be occupied, the particular trains that can be used, the places at which they shall stop, the price to be paid, and all the varying details of a business which is to be adjusted between two public servants, so that each can perform in the best manner its own particular duties. All this must necessarily be a matter of bargain, and it by no means follows that, because a railroad company can serve one express company in one way, it can as well serve another express company in the same way, and still perform its other obligations to the public in a satisfactory manner. The car space that can be given to the express business on a passenger train is, to a certain extent, limited, and, as has been seen, that which is allotted to a particular carrier must be, in a measure, under his exclusive control. No express company can do a successful business unless it is at all times reasonably sure of the means it requires for transportation. On important lines one company will at times fill all the space the railroad company can well allow for the business. . . .

"In this way three or four important and influential companies were able substantially to control, from 1854 until about the time of the bringing of these suits, all the railway express business in the United States, except upon the Pacific roads and in certain comparatively limited localities. In fact, as is stated in the argument for the express companies, the Adams was occupying, when these suits were brought, one hundred and fifty-five railroads, with a mileage of 21,216 miles; the American, two hundred roads, with a mileage of 28,000 miles; and the Southern, ninety-five roads, with a mileage of 10,000 miles. Through their business arrangements

with each other, and with other connecting lines, they have been able for a long time to receive and contract for the delivery of any package committed to their charge at almost any place of importance in the United States and in Canada, and even at some places in Europe and the West Indies. They have invested millions of dollars in their business, and have secured public confidence to such a degree that they are trusted unhesitatingly by all who need their services. The good will of their business is of very great value if they can keep their present facilities for transportation. The longer their lines and the more favorable their connections, the greater will be their own profits, and the better their means of serving the public. In making their investments and in extending their business they have undoubtedly relied on securing and keeping favorable railroad transportation, and in this they were encouraged by the apparent willingness of railroad companies to accommodate them; but the fact still remains that they have never been allowed to do business on any road except under a special contract, and that as a rule only one express company has been admitted on a road at the same time."

The cases in which the opinion from which the foregoing extracts are taken were suits brought by certain express companies which had been doing business on certain railroads, under special contracts between the respective companies, to compel the railroad companies to permit them to continue business on the roads on terms to be fixed by the courts; in other words, to demand as a right what they had theretofore enjoyed by permission of special contracts. This the court declined to do, and directed the bills to be dismissed.

Our citations have been intended partly to disclose, in a succinct form, the nature of the express business, but more particularly to show that, in essence, the express business is one that requires the participation of both the companies on terms agreed upon in special contracts, thus creating, to a certain extent, a sort of partnership relation between them in carrying on a common carrier business.

We are not furnished in this record with an entire copy of

the contract between the plaintiff in error, The Baltimore and Ohio Southwestern Railway Company, and The United States Express Company, but it is sufficiently disclosed in the statement made by the Judges of the Circuit Court of Appeals, that the companies were doing an express business together as common carriers under an agreement entered into on March 1, 1895; that by said contract it was agreed that the railway company would furnish, on its line between Cincinnati and St. Louis, for the express company, cars adapted to the carriage of express matter over said line; that one or more employés of said express company should accompany said goods in said cars over the said line, and for such purpose should be transported in said cars, free of charge; that the express company should protect the railway company and hold it harmless from all liability for injuries sustained by the employés of the express company while being transported for the said purpose over the railroad; that Voigt, the defendant in error, had agreed in writing to indemnify the express company against any liability it might incur by reason of said agreement between the companies, so far as he was concerned, and further agreed to release the railroad company from liability for injuries received by him while being transported in the express cars; that, in consideration of such agreement on his part, Voigt was employed as an express messenger, and while so employed, and while occupying as such messenger a car assigned to the express company, received injuries occasioned by a collision, on December 30, 1895, between the train which was transporting the express car and another train belonging to the same railroad company.

It is evident that, by these agreements, there was created a very different relation between Voigt and the railway company than the usual one between passengers and railroad companies. Here there was no stress brought to bear on Voigt as a passenger desiring transportation from one point to another on the railroad. His occupation of the car, specially adapted to the uses of the express company, was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the ex-

press company.   He was on the train, not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car.   His contract to relieve the companies from any liability to him, or to each other, for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his position as a messenger.   His position does not resemble the one in consideration in the Lockwood and similar cases, where the dispensation from liability for injuries was made a condition of a transportation which the passenger had a right to demand, and which the railroad companies were under a legal duty to furnish.   Doubtless, had Voigt only desired the method of transportation afforded the ordinary passenger, he would have been entitled to the rule established for the benefit of such a passenger.   But this he did not desire.   He was not asking to be carried from Cincinnati to St. Louis, but was occupying the express car as part of his regular employment, and as provided in a contract which, as we have seen, the railroad company was under no local compulsion to enter into.

The relation of an express messenger to the transportation company, in cases like the present one, seems to us to more nearly resemble that of an employé than that of a passenger. His position is one created by an agreement between the express company and the railroad company, adjusting the terms of a joint business — the transportation and delivery of express matter.   His duties of personal control and custody of the goods and packages, if not performed by an express messenger, would have to be performed by one in the immediate service of the railroad company.   And, of course, if his position was that of a common employé of both companies, he could not recover for injuries caused, as would appear to have been the present case, by the negligence of fellow-servants.

However this may be, it is manifest that the relation existing between express messengers and transportation companies, under such contracts as existed in the present case, is widely different from that of ordinary passengers, and that to relieve the defendant in error from the obligation of his contract would require us to give a much wider extension of the doc-

trine of public policy than was justified by the facts and reasoning in the *Lockwood case.*

This subject has received attentive consideration in several of the state courts.

In *Bates* v. *Old Colony Railroad*, 147 Mass. 255, it was held that if an express messenger holding a season ticket from a railroad company and desiring to ride for the conduct of his business in a baggage car, agrees to assume all risk of injury therefrom, and to hold the company harmless therefor, the agreement is not invalid as against public policy, and he cannot recover for injuries caused by negligence of the company's servants. In its opinion the court said:

"The question of a right of carriers to limit their liability for negligence in the discharge of their duties as carriers by contract with their customers or passengers in regard to such duties does not arise under the contract as construed in this case. See *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Griswold* v. *New York & New England Railroad*, 53 Conn. 371. It was not a contract for carriage over the road, but for the use of a particular car. The consideration of the plaintiff's agreement was not the performance of anything by the defendant which it was under any obligation to do, or which the plaintiff had any right to have done. It was a privilege granted to the plaintiff. The plaintiff was not compelled to enter into the contract in order to obtain the rights of a passenger. Having these rights, he sought something more. . . . The fact that the plaintiff was riding in the baggage car as an express messenger in charge of merchandise which was being transported there, shows more clearly that the contract by the express company and the plaintiff was not unreasonable or against public policy. He was there as a servant engaged with the servants of the railroad company in the service of transportation on the road. His duties were substantially the same as those of the baggage-master in the same car; the latter relating to merchandise carried for passengers, and the former to merchandise carried for the express company. His actual relations to the other servants of the railroad corporation engaged in the transportation were substantially the same as

those of the baggage-master, and would have been the same had he been paid by the corporation instead of by the express company. Had the railroad done the express business, the messenger would have been held by law to have assumed the risk of the negligence of the servants of the railroad. It does not seem that a contract between the express company and the plaintiff on the one hand, and the defendant on the other, that the express messenger in performing his duties should take the same risk of injury from the negligence of the servants of the railroad engaged in the transportation that he would take if employed by the railroad to perform the same duties, would be void as unreasonable or as against public policy."

The same ruling prevailed in the subsequent case of *Hosmer* v. *Old Colony Railroad*, 156 Mass. 506.

*Robertson* v. *Old Colony Railroad*, 156 Mass. 526, was an action brought for personal injuries caused to the plaintiff, an employé of the proprietors of a circus, while riding in a car belonging to the proprietors, drawn by the defendant company over its road under a written agreement, in which it was provided that the circus company should agree to exonerate and save harmless the defendant from any and all claims for damages to persons or property during the transportation, however occurring, and it was held that, as the defendant company was under no common law or statutory obligation to carry the plaintiff in the manner he was carried at the time of the accident, it did not stand towards him in the relation of a common carrier, and that the plaintiff could not recover.

*Griswold* v. *New York & New England Railroad*, 53 Conn. 371, where a restaurant keeper had the privilege to sell fruits and sandwiches on the trains and to engage and keep a servant for that purpose on the trains, riding on a free pass, it was held that such servant could not recover for injuries sustained on the train caused by the negligence of the company's servants, because he was not a passenger.

The Supreme Court of Michigan, in *Coup* v. *Wabash, St. Louis &c. Railway Co.*, 56 Michigan, 111, where a railroad company, under a special agreement, was to furnish men and motive power to transport a circus of the plaintiff from Cairo

to Detroit on cars belonging to the plaintiff, stopping at certain named points for exhibition, the plaintiff paying a fixed price therefor, held, that such transportation was not a transaction with a common carrier as such; that the contract was valid, and that the railway company was not liable for injury due to negligence.

Where a railroad company made a special contract in writing with the owner of a circus to haul a special train between certain points, at specified prices, and stipulating that the railroad company should not be liable for any damage to the persons or property of the circus company from whatever cause, it was held by the Circuit Court of Appeals of the Seventh Circuit, citing *Coup* v. *Railroad Co.*, 56 Michigan, 111, and *Robertson* v. *Old Colony Railroad*, 156 Mass. 506, that the railroad company was not acting as a common carrier, and was not liable under the contract for injuries occasioned by negligent management of its trains. In its opinion the court quoted the following passage from *Railroad Co.* v. *Lockwood*: "A common carrier may undoubtedly become a private carrier or bailee for hire when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry." *Chicago, Milwaukee & St. Paul Railroad* v. *Wallace*, 24 U. S. App. 589.

*Louisville, New Albany & Chicago Railway* v. *Keefer*, 146 Indiana, 21, 34, was a case in all respects like the present. It was a suit by a messenger of the American Express Company against the railroad company for personal injuries. The contracts between the express company, the messenger and the railroad company were in terms similar to those existing in the present case, and the defence was the same as that made here. It was held that the contracts were valid and that the defence was good. It was said:

"Under the doctrine declared in the *Express cases*, 117 U. S. 1, the property was being carried by appellant, not as a common carrier in the performance of a public duty, but being carried, with a messenger in charge, as a private carrier, the right to have it and him carried having first been secured to the express company by private contract, the only way known

to the law by which the right, either as to the goods or appellee as messenger in charge, could be acquired.

" Appellee, when he went on the appellant's train and took charge of the express packages in the baggage car, did not go as a passenger who merely desired to be carried on the train from one point to another.  Carriage was not the object of his going upon the train; that was merely incidental.  His purpose was not to be upon the train, in cars provided for passengers, but that he might handle and care for the property of his employer thereon, in the space set apart in the baggage car for that purpose.  Under the authorities cited it was not the duty of appellant, as a common carrier, to carry for the express company the goods or messenger in charge of them. The contract between appellant and the express company gave it and its messenger rights which appellant as a common carrier could not have been compelled to grant."

By the Supreme Court of Indiana, in *Pittsburgh, Cincinnati &c. Railway* v. *Mahoney*, 148 Indiana, 196, it was held that railway companies may contract as private carriers in transporting express matter for express companies, and in such capacity may require exemption from liability for negligence as a condition to the obligation to carry, and that a release by an employé of an express company of all liability for injuries sustained by the negligence of the employé or otherwise includes the liability of the express company to hold a railroad company, with which it does business, harmless against claims by employés of the express company for injuries, and precludes an action against the railroad company for causing his death while in discharge of his duty as employé of such express company.

A precisely similar question was presented in the case of *Blank* v. *Illinois Central Company*, and was decided the same way, by the Appellate Court for the First District of Illinois, in an opinion rendered March 14, 1899.  80 Ill. App. 475. The court cites the *Express cases*, and approves and applies the reasoning in the Indiana cases; and this judgment has been affirmed by the Supreme Court of Illinois.  182 Illinois, 332.

The same doctrine prevails in the State of New York.  *Bis-*

*sell* v. *New York Central Railroad*, 25 N. Y. 442; *Poucher* v. *New York Central Railroad*, 49 N. Y. 263. Though it must be allowed that the New York decisions are not precisely in point, as those courts do not accept the doctrine of *Railroad Co.* v. *Lockwood* to its full extent, but hold that no rule of public policy forbids contractual exemption from liability, because the public is amply protected by the right of every one to decline any special contract, on paying the regular fare prescribed by law, that is, the highest amount which the law allows the company to charge.

As against these authorities there are cited, on behalf of the defendant in error, several cases in which it has been held that postal clerks, in the employ of the Government, and who pay no fare, are entitled to the rights of ordinary passengers for hire; and it is contended that their relation to the railroad company is analogous to that of express messengers. *Arrowsmith* v. *Nashville & Decatur Railroad*, 57 Fed. Rep. 165; *Gleeson* v. *Virginia Midland Railroad*, 140 U. S. 435; *Ketcham* v. *New York, Lake Erie &c. Railroad*, 133 Indiana, 346; *Seybolt* v. *Railroad Co.*, 95 N. Y. 562.

There is, however, an obvious distinction between a postal clerk and the present case of an express messenger in this, that the messenger has agreed to the contract between the express and the railroad companies, exempting the latter from liability, but no case is cited in which the postal clerk voluntarily entered into such an agreement. To make the cases analogous it should be made to appear that the Government, in contracting with the railroad company to carry the mails, stipulated that the railroad company should be exempted from liability to the postal clerk, and that the latter, in consideration of securing his position, had concurred in releasing the railroad company.

*Brewer* v. *New York, Lake Erie & Western Railroad*, 124 N. Y. 59, is also cited as a case wherein a recovery was maintained by an express messenger against a railroad company, and where there existed an agreement between the express company and the railroad company that the latter should be indemnified and protected against all risks and liabilities. But the court put its judgment against the railroad company

expressly upon the ground that the messenger had no knowledge or information of the contract between the companies, and was not himself a party to the agreement to exempt the railroad company.

*Kenney* v. *N. Y. Cent. &c. Railroad,* 125 N. Y. 422, was also a case where, in an action for damages by an express messenger against a railroad company, the plaintiff was permitted to recover, notwithstanding there was an agreement between the companies that the railroad company should be released and indemnified for any damage done to the agents of the express company, whether in their employ as messengers or otherwise. But it did not appear that there had been any assent to or knowledge of this contract on the part of the messenger; and the court said:

" Our decision, however, is placed upon the ground that this contract does not, in unmistakable language, provide for an exemption from liability for the negligence of the defendant's employés. The rule is firmly established in this State that a common carrier may contract for immunity from its negligence or that of its agents; but that to accomplish that object the contract must be so expressed and not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule, and forbid its operation except when the carrier's immunity from the consequences of negligence is read in the agreement *ipsissimis verbis.*"

*Chamberlain* v. *Pierson,* 59 U. S. App. 55, 64, in the Circuit Court of Appeals of the Fourth Circuit, was a case in which an express messenger was injured while travelling on a railroad which had a contract with the express company, exonerating the foreman from responsibility for injuries to the agents of the latter, and in which said agreement was ineffectually pleaded in bar of the action. The court said:

" The discussion of this feature of the case presents this question: Was the plaintiff below, as a messenger of the express company, bound by the contract between the railroad company and the express company to assume all risks to life and limb to which he was exposed in performing his

duties on the train as an express messenger? He was not a party to the contract, never ratified it, and in his testimony, when asked if he knew of this provision of the contract, answered, 'If I had known that I wouldn't have gone.'"

Without enumerating and appraising all the cases respectively cited, our conclusion is that Voigt, occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies, was not a passenger within the meaning of the case of *Railroad Company* v. *Lockwood;* that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger, and that such a contract did not contravene public policy. Accordingly,

*We answer the question submitted to us by the judges of the Circuit Court of Appeals in the negative; and it is so ordered.*

Mr. Justice HARLAN, dissenting.

In *Railroad Co.* v. *Lockwood*, 17 Wall. 357, 384, it was held that a "common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law;" that "it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants;" that "these rules apply both to carriers of goods and carriers of passengers for hire, and with special force to the latter;" and that "a drover travelling on a pass, such as was given in this case, is a passenger for hire." The railroad pass referred to declared that its acceptance was to be considered a waiver of all claims for damages or injuries received on the train. The above principles have been recognized and enforced by this court in numerous cases.

I am of opinion that the present case is within the doctrines of *Railroad Co.* v. *Lockwood*, and that the judgment should be affirmed upon the broad ground that the defendant corpora-

tion could not, in any form, stipulate for exemption from responsibilty for the negligence of its servants or employés in the course of its business whereby injury comes to any person using its cars, with its consent, for purposes of transportation. That the person transported is not technically a passenger and does not ride in a car ordinarily used for passengers is immaterial.