[No. 7537.   Decided May 5, 1909.]

## J. S. BUCK et al., Appellants, v. OREGON RAILROAD & NAVIGATION COMPANY, Respondent.[1]

CARRIERS—LIVE STOCK—LIMITATION OF LIABILITY—SAFETY OF STOCK PENS—VALIDITY—CONSTRUCTION. A provision in a contract for the shipment of stock requiring the shipper to inspect cars and stock pens and to report any visible defects and demand repairs, on pain of accepting their sufficiency, does not relieve the company from liability for negligence in failing to furnish suitable stock pens, as it would be void if so construed; and it only requires the shipper to assume liability when the defect is known or plainly visible to a casual observer.

SAME—INSPECTION BY SHIPPER—EVIDENCE—SUFFICIENCY. The shipper of stock does not assume the liability for loss of stock that escaped from a stock pen through a gate negligently fastened with a bent hook which yielded to pressure on the gate from the inside, and which had been in that condition for some time, where it appears that he was taken to inspect the pen at night, that it was the only one unoccupied, that he walked around it, and found it apparently sufficient and in good condition and the gate fastened.

SAME—QUESTION FOR JURY. Where a stock pen was secure except that the gate was fastened with a bent hook that yielded to pressure on the gate from the inside, and in the morning the gate was found open, whether the escape of the stock was due to the defective hook is a question for the jury.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered February 20, 1908, granting a nonsuit at the close of plaintiffs' case, dismissing an action to recover the value of live stock placed in defendant's stock pens.   Reversed.

*Tustin & Moore* and *R. S. Cordiner*, for appellants.

*W. W. Cotton, W. A. Robbins,* and *Samuel R. Stern,* for respondent.

MOUNT, J.—This action was brought by the appellants to recover for the loss of six head of horses and the expense of

[1]Reported in 101 Pac. 491.

gathering fifty-seven head of cattle, which escaped from the stock pens belonging to respondent near Spokane. The case was tried to the court and a jury. After the plaintiffs had submitted their evidence in support of the complaint, the defendant moved for a nonsuit, which motion was granted, and the action dismissed. The plaintiffs appeal.

It appears from the plaintiffs' evidence, that the defendant is a common carrier of freight; that on May 7, 1907, the defendant agreed to transport two car loads of live stock, consisting of fifty-seven head of cattle and six head of horses, from Colfax, in this state, to Innisfail, Alberta, Canada. The stock was delivered to the defendant on May 8, and loaded on its cars at Colfax on that day. About the time the stock was loaded on the cars, plaintiffs signed a contract which provided, among other things, as follows:

"The shipper agrees to inspect the cars in which such stock is to be transported and any yards or inclosures on the premises of the railroad company into which said stock may be unloaded and satisfy himself that they are sufficient and safe and in proper order and condition, and shall report to the agent or employees of said carrier any visible defects therein and demand necessary repairs before proceeding to occupy said cars or inclosures, and the fact of his loading said stock into said cars or occupying said inclosures shall be an acknowledgment and acceptance by him of the sufficiency and suitability in every respect of said cars and inclosures for shipment and yarding thereof."

After the stock was loaded into the cars, the train left Colfax at about ten o'clock in the forenoon of May 8, 1907, and arrived at Spokane at about ten o'clock that night. Plaintiffs requested the defendant to take the cars to the stock pens of the company located about two miles out of the city of Spokane, so that the stock might be unloaded for food, rest and water. The defendant thereupon transferred the cars to the stock pens, where they arrived at about one o'clock at night. All the pens were full of stock, except one. The stock was unloaded into this pen. Mr. Buck, one of the plaintiffs, thereupon walked around the pen on the walking

board on top of the pen. He examined the gate, by looking
at the same and shaking it with his foot. He saw that it
was fastened. It "appeared sufficient," and the stock were
left there for the night. All the parties returned on the en-
gine to Spokane, for lodging for the night.

The next morning at six o'clock they returned to the stock
pens, and found all of the cattle and horses gone. The cattle
were gathered again by the plaintiffs within a few days, but
the horses were not found. The fastening for the gate was a
common iron hook. The shank of this hook was bent so that
the gate was apparently secure. Pressure upon the gate
from the inside would cause the hook to fly out of the staple
and let the gate swing open. It was shown that this hook
and gate had been in that condition for some time prior to
the time the stock were placed in the pen. No chain or other
fastening for the gate had been provided by the railway com-
pany. Upon substantially these facts, the trial court was of
the opinion that the plaintiffs failed to comply with their
contract of shipment, because they did not examine the in-
closure sufficiently to notice apparent defects therein; that
the gate fastening was apparently deficient, and could have
been easily discovered, and that it was plaintiffs' duty under
the contract to make the discovery, and for that reason
granted the nonsuit and dismissed the action.

We think the trial court erred in this ruling. If this pro-
vision of the contract is valid, it is so because it does not
relieve the carrier of its common law duty to furnish proper
facilities for and to safely transport the appellants' property,
and also because it is not an attempt to limit its common law
liability so as to exempt the carrier from the consequences of
its own negligence or that of its servants.

"The carrier is bound to furnish good and sufficient stock
pens and yards at its depot for the shipment of cattle and
other live stock, and such other facilities as may be necessary
for the safe and convenient loading of the stock. The shipper
is entitled to recover for all damages sustained by his prop-
erty in consequence of a failure by the carrier to furnish such

facilities or to keep them safe, and the carrier cannot be relieved from such liability by showing that the shipper saw the stock pens or knew of the defects in them." 5 Am. & Eng. Ency. Law (2d ed.), p. 430, and authorities there cited.

In the case of *The Kensington*, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190, the supreme court of the United States, at page 268, said:

"It is settled in the courts of the United States that exemptions limiting carriers from responsibility for the negligence of themselves or their servants are both unjust and unreasonable, and will be deemed as wanting in the element of voluntary assent; and, besides, that such conditions are in conflict with public policy. This doctrine was announced so long ago, and has been so frequently reiterated, that it is elementary. We content ourselves with referring to the cases of *Baltimore & Ohio S. W. R. Co. v. Voight*, 176 U. S. 498, 505, 507, 20 Sup. Ct. 385, 44 L. Ed. 560, and *Knott v. Botany Worsted Mills*, 179 U. S. 69, 71, 21 Sup. Ct. 30, 45 L. Ed. 90, 93, where the previously adjudged cases are referred to and the principles by them expounded are restated."

This is the general rule, and is apparently conceded by the respondent. If the provision of the contract under consideration was intended to impose upon the shipper the duty of inspecting the cars and inclosures belonging to the railway company, which duty legally rests upon the carrier, the provision would be void. But if we assume that the provision is not void because it does not attempt to evade the legal duty of the carrier, but is only an added precaution which the carrier imposed upon the shipper in order to secure greater safety in the shipment, then the shipper will be required to use reasonable diligence only, and his failure to observe and report visible defects would not take away his right to recovery, unless he was negligent and loss was caused by such negligence. In other words, if the shipper in this case had found the gate open or the fence decayed or down, and knew the pen was not safe to put his stock into, he no doubt would have been required to notify the company, or make the place

safe himself before placing his stock therein. But that is not the condition in this case. The shipper was taken out to the place in the night, at one o'clock, a starlight night. The pen was apparently in good condition. No other pen was available. He was required to use the one he did use. He walked around the top of it. The gate was closed and apparently fastened with the appliance provided by the carrier for that purpose, and there was no other appliance at hand. The shipper placed his foot on the gate and it appeared sufficient. Under these circumstances he clearly had a right to assume that the carrier had done its duty, and had furnished a sufficient appliance. He was not required to make a critical examination of the appliance to see that it was proper and safe. We think the provision of the contract above quoted can be construed only as requiring the shipper to assume liability when the defect is known or is plainly apparent and visible to a casual observer, which was not the case here. The trial court was apparently of the opinion that it was the duty of the shipper to make a careful inspection, such as is required of the carrier, and to discover defects. But this, as we have seen above, is not a correct interpretation of the contract. The evidence was sufficient to go to the jury upon the question of negligence of the shipper.

Respondent argues that the evidence was insufficient to show that the appellants' stock escaped by reason of the defective latch upon the gate. The trial court did not pass upon this question, but based its ruling entirely upon the duty of the appellants under the terms of the contract. We think the circumstances surrounding the escape of the stock were sufficient to go to the jury, as to whether or not the defective latch was the cause of the loss, and that the court erred in granting the nonsuit.

The judgment is therefore reversed, and the cause remanded for a new trial.

RUDKIN, C. J., CHADWICK, CROW, PARKER, and DUNBAR, JJ., concur.