·9054

CARTER v. SOUTHERN RY.—CAROLINA DIVISION.

(84 S. E. 999.)

RAILROADS—MASTER AND SERVANT—CONTRACT FOR EXEMPTION OF LIABILITY FOR NEGLIGENCE.

1. CARRIERS—STIPULATION AGAINST LIABILITY—NEGLIGENCE.—A common carrier may not stipulate for exemption from liability for its negligence.

2. MASTER AND SERVANT—LIABILITY FOR INJURY—VALIDITY OF CONTRACT.—Where contract relations exist between an active corporation and a passive corporation, and where both have servants, the two corporations may not contract between themselves to relieve the active corporation from responsibility for injury from its negligence to the servants of the passive corporation.

3. MASTER AND SERVANT—PERSONAL INJURIES—LIMITATION OF LIABILITY —LEGALITY—PUBLIC POLICY—INJURY TO PULLMAN EMPLOYEE.—A contract declaring that the employee of a Pullman Company knew that it operated its cars on defendant's lines, and that contracts existed and were to be made between the two corporations, whereby th Pullman Company was to save the defendant harmless against liability to plaintiff in such cases as the contract might provide, and whereby the employee ratified such contracts and agreed to hold the Pullman Company harmless for all money the defendant might have to pay her for injury, and gave the defendant such contracts as a defense to any suit by her, was invalid, and no defense to her action for injury from a collision between defendant's train and a standing Pullman, the floor of which she was scrubbing.

Before MEMMINGER, J., Charleston, July, 1914. Reversed.

· Action by Sarah Carter against Southern Railway—Carolina Division. From an order overruling a demurrer to third defense in answer, plaintiff appeals.

The defense demurred to, and contract in question, were as follows:

Third. For a third defense:

1. It says on information and belief, that the plaintiff, Sarah Carter, was not an employee of this defendant at the time when she received the injury mentioned in said complaint, but was at that time in the employment of the Pullman Company, which is a corporation under the laws of the State of Illinois, and that before the happening of such injury to plaintiff, she, the said plaintiff, for valuable consideration, did, by deed or contract, under her hand and seal, release and discharge the said Pullman Company and all corporations or persons over whose lines of railroad the cars of the Pullman Company might be operated from all claims for liability of any nature or character whatsoever on account of any personal injury to her while in the employment of said Pullman Company, a copy of which contract and release is hereto annexed as a part of this defense, and marked Exhibit "A."

2. That at the time of said injury this defendant was operating the cars of the said Pullman Company over its line under agreement with the said Pullman Company. Jos. W. Barnwell, Defendant's Attorney.

*Exhibit "A."*

The Pullman Company, Charleston Station, South Carolina, U. S. A., September 19, 1908.

Contract of Employment. Be it known, that I, the undersigned, hereby accept employment by and enter into or continue from that date in, the service of, The Pullman Company, upon the following express terms, conditions and agreements, which in consideration of such employment and the wages thereof, I do hereby make with the said Pullman Company, to wit:

First. So long as I shall remain in said employment and service I will fully comply with all regulations, rules and

orders of said company, or its agents, issued for the government of its employees, go wherever I may be required in said service, and well, faithfully and honestly perform all duties assigned to me.

Second. My wages shall at all times be calculated and paid at the monthly rate per day for the number of days I shall have been actually employed, and I may quit or resign, or may be suspended or discharged from such employment and service at any time or at any place without previous notice.

Third. If said company shall suffer any loss or damage of any nature or character whatever resulting from the violation of any regulation, rule or order of said company, or its agents, or any fault, neglect, dishonesty or incompetency on my part, or in case any commissary supplies are placed in my custody and not returned or paid for by me in accordance with the rules of said company, I will immediately, upon notice thereof, make with the proper officer of said company a satisfactory settlement of such loss, damage, default or deficit, or failing so to do, the said company is hereby expressly authorized, at any settlement made with me, to deduct from my wages the full amount of each and every such loss, damage, default or deficit, and to appropriate the same to its own use as liquidated damages. The value of commissary supplies shall be the prices shown on the luncheon check at the time; and it is hereby expressly agreed that each and every such loss, damage, default or deficit shall be finally determined by the proper officer of said company and adjusted as hereinbefore provided.

Fourth. I assume all risks of accident or casualties by railway travel or otherwise, incident to such employment and service, and hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge the Pullman Company, and its officers and employees from any and all claims for liability of any

nature or character whatsoever on account of any personal injury or death to me in such employment or service.

Fifth. I am aware that said Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment, by means of contracts wherein said The Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employees of said The Pullman Company in cases provided for in such contract, and I do hereby ratify all such contracts made, or to be made, by said The Pullman Company, and do agree to protect, indemnify and hold harmless said The Pullman Company with respect to any and all sums of money it may be compelled to pay, or liability it may be subject to, under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense.

Sixth. I will obey all rules and regulations made, or to be made, for the government of their own employees by the corporations or persons over whose lines of railroad the cars of said The Pullman Company may be operated while I am traveling over said lines in the employment or service of said The Pullman Company; and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations or persons, which rights I do expressly renounce, and I hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge any and all such corporations and persons from all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me while in said employment or service.

I have read and understand every word of this paper. Sarah Carter.

Signed, sealed and delivered in the presence of C. C. Freet.

The person signing the within paper should answer in his own handwriting the following question and then subscribe his answer:

Question: Did you read the within paper before signing it?   Answer: Yes.   Signature Sarah Carter.

Verified.

The demurrer was as follows:

To Joseph W. Barnwell, Esquire, Defendant's Attorney:

Please take notice that the defendant herein demurs to the third defense attempted to be set up in the amended answer of the defendant above named on the ground that the facts set out in said third defense constitute no defense to the cause of action set forth in plaintiff's complaint, and that said alleged contract set forth in said third defense is void under the Constitution and laws of the State of South Carolina, and is against public policy.   Logan & Grace, Plaintiff's Attorneys.

The following was the order overruling demurrer:

The decision of this Court is sought herein upon a demurrer to a certain third defense which was allowed, as an amendment, by an order of Judge Shipp of June 26, 1913.

The action is by a car cleaner against the defendant railway company for an injury by an alleged collision of a train of said defendant with a Pullman car in its yards, in which car plaintiff was at work.

Substantially, the third defense is an alleged release executed by plaintiff to the Pullman Company from all claims for damages for injury caused to her by it, and thereby also releasing defendant, over whose lines the car would be used.

Plaintiff's position, under the demurrer, is that such contract is void as being against public policy, as going to relieve the defendant from damages for negligence, and

she invokes art. IX, sec. 15 of the Constitution, and cites two cases from other States, which it claimed support the demurrer. These cases are: *Stone* v. *Union Goc. R. Co.* (Utah), 89 Pacific 715, and *San Antonio & A. R. Ry. Co.* v. *Tracy* (Tex.), 130 S. W. 639.

Defendant, against the demurrer, cites several cases in point. See *Robinson* v. *B. & O. R. R.* (Dist. Col.), Washington Law Reporter, vol. 41, page 194; *B. & O. R. R. Co.* v. *Voight,* 176 S. W. 498; *Denver & C. R. R. Co.* v. *Wham* (Colo.), 89 Pacific 39; *McDermond* v. *S. Pac. Co.,* 122 Fed. 669.

The demurrer cannot be sustained. By it the allegation of the defense that plaintiff was an employee of the Pullman Company and not of the defendant railway company is (for the purpose of the demurrer) admitted; and the release set out in the said defense, not being by an employee of the defendant, does not come within the laws of the Constitution which is prohibitory only of such release contracts as between employer and employee. So, also, in both of the cases cited on behalf of the plaintiff, the release contracts held to be obnoxious, as against public policy, were as between employer and employee.

The case from Washington, cited on behalf of defendant, is exactly in point, being as to a Pullman porter, and, in fact, is not at all in conflict with either of plaintiff's cases.

All Courts agree that the employer cannot stipulate against liability for negligence to an employee, but all agree that an employee may contract with his employer to exonerate some third person from liability to him for the third person's negligence; the same being upon the principle of an indemnity or insurance contract, which is everywhere valid; as, in numerous cases, where it has been held that a contract made by one who was in the employ of an express company, and not of the railway company, exempting the latter from liability for injury whilst in the course of his employment with the express company, from ordinary neg-

ligence of the railway company as that of its servants, was valid and did not contravene public policy.

This statement of the law is found in the Stone case at page 721; and the admitted fact there was that Stone was in the employment of both the railroad and the express company, and he had executed a release only to the express company, relieving the railroad also, which release was held to be void as to both; as to the express company because directly between employer and employee, and as to the railroad, indirectly, as being employed by the railroad also, the contract was for its benefit with an employee.

In the Tracy case, Tracy was in the employment of the Pullman Company, and was under contract with it to release it for its negligence. The Pullman Company was under separate contract with the railroad to indemnify it against damages; and the railroad, when sued by Tracy, sought to interplead the Pullman Company under that contract and the Court allowed it as an insurance contract. The railroad there did not have, and did not seek to set up, a release by an employee of the Pullman Company to it, as herein, but to have the Pullman Company interpleaded under the insurance contract; and it was the Pullman Company which sought to escape the interpleader on the ground of the release of its employee. The interpleader was allowed, but the release contract, under which the Pullman Company sought to escape from negligence to its employee, was what the Court denounced, in no uncertain terms, as against public policy, as in fact all other Courts have done.

No cases, therefore, when examined, obtain to support this demurrer.

Plaintiff's attorney urges that if this defense is allowed it opens the door to railroads escaping liability for negligence by getting up bogus holding companies for their rolling stock and having similar releases executed to them by employees and defending on them.

This system of conjecture does not go to support the demurrer. It will, of course, be for the jury to say, in each case, whether or not the plaintiff was in fact employed by the railroad. If an employee, the contract of release would, of course, be void. If the release was in effect to the railroad as employer, though apparently to some other company, and that a bogus one, it would be equally so.

This Court is satisfied, therefore, that if the release set out in the third defense is genuine, and not in fact really between the railroad and an employee, it is a good and valid defense as against ordinary negligence of the railroad, the party defendant herein.

The demurrer is overruled and not sustained, and it is so ordered.

The plaintiff appealed on the following exception:

1. Because his Honor, the Circuit Judge, erred, it is respectfully submitted, in overruling the demurrer interposed by plaintiff-appellant to defendant-respondent's third defense, the error being that said defense so sought to be set up is void, as against public policy, and is in violation of article IX, section 15 of the Constitution of the State, and, therefore, constituted no defense to the cause of action set forth in plaintiff's complaint, and his Honor should have so held.

*Messrs. Logan & Grace,* for appellant, cite: Const., art. IX, sec. 15; 55 S. C. 153, 169; 80 S. C. 167; 89 Pac. 39; 11 L. R. A. (N. S.) 432; 176 U. S. 498; 130 S. W. 639; 5 L. R. A. (N. S.) 458.

*Messrs. Jos. W. Barnwell, N. B. Barnwell* and *B. L. Abney,* for respondent, cite: *As to contracts against negligence:* The Doctor and Student, St. Germain, Dialogue 2, c. 38; Noy's Maxims 92; 2 Steven's Commentaries, p. 135; Story on Bailments (7th ed.) 549a; 10 H. of L. Cases

473; 7 Exq. 707; 2 Rich. 286; 9 Rich. 201; 19 S. C. 353; 26 S. C. 258; 39 S. C. 55; Civil Code 1912, sec. 2567; Const., art. IX, sec. 3; XIII Stats. 37. *Limiting liability as to employees:* 1 Am. L. Reg. 717; 57 Ga. 512; 2 Head. 517; 2 Thomp. Neg., p. 715; Const., art. IX, sec. 15; 55 S. C. 152. *Liability to nonemployees:* 60 S. C. 477; 77 S. C. 467; 85 S. C. 405; 55 S. C. 152; 80 S. C. 167; 90 S. C. 249; 95 S. C. 210; 176 U. S. 498; 93 Fed. 543; 41 Washington Law Rep. 194; 40 App. Dist. Columbia 169; 65 C. C. A. 354; 67 *Ib.* 548; 122 Fed. 669; 156 Mass. 506; 119 Wis. 197; 182 Ill. 332; 146 Ind. 31; 66 Atl. 814; 11 L. R. A. (N. S.) 432; 29 Ky. L. Rep. 53; 104 Va. 645; 89 Pac. 715; 130 S. W. 639. *Form of contract:* 89 Pac. · 39; 11 L. R. A. (N. S.) 432; 19 S. C. 353.

April 7, 1914.

The opinion of the Court was delivered by Mr. Justice Gage.

Action for tort to the person; answer, amongst other things, which plead in bar a contract *inter alios;* demurrer thereto by plaintiff; demurrer overruled; appeal here from that order, and that is the sole issue.

History: The plaintiff is a colored woman, a cleaner of Pullman cars in the city of Charleston; at the instant such a car was on one of defendant's tracks near the union station, detached; the plaintiff was on her knees in the car scrubbing the floors of it; one of defendant's trains ran into the Pullman and hurt the woman.

This is the plea, not yet the proof.

As a third and complete defense to the action, defendant set up a contract betwixt the plaintiff and the Pullman Company, signed by her, but not by that company.

That contract will be reported, and will, therefore, not be much quoted from herein. It is a work of art, wholly beyond the conception of the ordinary laborer.

27—100

There are six paragraphs of the contract, and at the end of it the plaintiff declared she had "read and understood, every word" of it.

The last and sixth paragraph is that upon which the controversy here turns; and the last six lines of it make the kernel of the case.

The fifth paragraph of the contract seems akin to the sixth paragraph; but the answer pleads the words of the sixth paragraph. They are, in substance, these:

"And I hereby, for myself * * * forever release, acquit and discharge" (the Southern Railway Company) "from all claims for liability of any nature or character whatsoever, on account of any personal injury * * * to me while in said employment"—of the Pullman Company.

We venture to think that a speedier administration of justice would have been achieved had the verdict of a jury been taken on the issuable facts; and had the question of law now made been reserved to sustain or to defeat any verdict which may have been rendered for or against the defendant.

We think there is no warrant for the plaintiff's contention "that the contract in question did not contemplate any such state of facts as in the case at bar." The last six lines of the sixth paragraph are comprehensive enough to include a woman on her knees scrubbing the floor of a car.

It is perhaps best that the issue now made should be made for one circumstanced as she was.

The appellant's counsel frankly states that which is true, that the view of the Circuit Court "is unquestionably sustained by many authorities." The preponderance of decisions is with the respondent; but we venture to think the preponderance of reason is against it.

It is true that persons ought to have, and generally are permitted to have, the right to make their own contracts.

Courts and Judges ought not to interfere thereabout except for paramount reasons, they ought to interfere when

such reasons do exist. But in our view, the issue here is not whether the contract shall be ignored, but what is the contract.

There is now no difference of opinion anywhere about the pronouncement that a common carrier may not stipu-, late for exemption from liability for its negligence. *Lockwood* v. *R. R. Co.,* 17 Wallace 357.

Thereby, and, therefore, it would not have been lawful for the plaintiff and the defendant to have stipulated that the defendant would not be liable to the plaintiff for the consequences of its negligent act, whereby its train was run into a coach of the Pullman Company standing on tracks in its yards. That was frankly admitted by the respondent's counsel.

Plainly, if the contract here set up is in legal effect and essence of such a character, then it cannot operate to discharge the defendant.

The Courts at the outstart had held that when there exists contract relations betwixt what we shall term an active corporation and a passive corporation, and where both had servants, that the two corporations might not contract *between themselves* to relieve the active corporation from responsibility for hurt to the servants of the passive corporation resulting from the negligence of the active corporation. (*Brewer* v. *N. Y. C. R. R.,* 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, cited in *B. & O. R. R.* v. *Voight,* 176 U. S. 518, 20 S. Ct. 385.)

And upon the ground that the servant was not a party to · the contract.

In time there followed in addition to a contract between the two corporations a contract betwixt the servant of the passive corporation and that corporation, to save harmless the active corporation from injuries to the servant of the passive corporation, resulting from the negligence of the active corporation.

Of such is the contract in issue.

The first four paragraphs of it have to do exclusively with the relations of the servant with the Pullman Company; the last two paragraphs of it have to do exclusively with the interdependent relations of the servant and the two corporations.

The party for whose benefit the fifth and sixth paragraphs were made is the defendant here. The Pullman Company, if indeed it is a party to the contract, is merely a person in whose name a contract is made for the benefit of another; and the defendant is that other and is the real party in interest; and now and here actually claiming under it.

The fifth paragraph of the contract lends strength to this construction. That paragraph contains two predicates— (1) that Carter (the plaintiff) knows that the Pullman Company operates its cars on the Southern lines and that contracts exist, and are to be made, between the two corporations whereby the Pullman Company agrees to save harmless the Southern Company against liability of Southern Company to Carter, in such cases as the contract may provide; and (2) that Carter *ratifies* such contracts, and agrees to hold harmless the Pullman Company for all money the Southern Company may have to pay Carter for injury, and the Southern Company may have this contract in defense of a suit against it by Carter.

If the Southern Railway shall lose by this action, then, by the terms of the contract here, and by the terms of the other contract it has with the Pullman Company, which we have not seen, but which is referred to in this contract, it has recourse against the Pullman Company.

We have followed with interest the learned and able argument of the respondent's counsel; but we are of the settled conviction, upon reason, that this contract is none other than that which was proscribed in the Lockwood case; "the voice is Jacob's voice, but the hands are the hands of Esau."

It is, therefore, adjudged that the order of the Circuit Court be reversed and the demurrer to the third defense of the answer be sustained.