CHARLES COPPOCK, Respondent, *v.* THE LONG ISLAND RAILROAD·
COMPANY, Appellant.

*Negligence — when a release from liability therefor is ineffectual.*

Upon the trial of an action brought to recover the damages resulting from per-
sonal injuries sustained by the plaintiff, it appeared that the plaintiff was
injured in a collision upon the defendant's road which was the result of the
negligence of its employees; that he was employed by one Wyckoff as a groom
and was going from the summer residence of his employer at Southampton to·
Long Island City; that he, in company with Wyckoff's coachman, was to trans-
port the horses of Wyckoff in what is known as a Wagner palace horse car upon
defendant's road; that the coachman went to the ticket office at Southampton
and paid a certain sum for the car, which covered the transportation of
Wyckoff's horses and carriage and two men in charge. It further appeared
that the coachman at the time he paid for the car signed a printed release
which exempted the railroad company from liability for any damage resulting
to the persons in charge of the horses by reason of the negligence of its serv-
ants. The plaintiff testified that he supposed, and he was in fact so informed
by the coachman, that he (the coachman) had bought his (plaintiff's) ticket and
paid his fare. The jury found that the plaintiff did not know that a contract
had been made exempting the railroad company from liability for negligence
towards him.

*Held,* that a verdict in favor of the plaintiff should be affirmed.

APPEAL by the defendant, The Long Island Railroad Company,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Kings on the
7th day of February, 1895, upon the verdict of a jury rendered
after a trial at the Kings County Circuit, and also from an order
entered in said clerk's office on the 7th day of February, 1895,.
denying the defendant's motion for a new trial.

The release executed by Wyckoff's coachman, referred to in the
opinion, was as follows:

"LONG ISLAND RAILROAD.
"LIVE STOCK CONTRACT.    (RELEASE.)
"Station,                189

"In consideration of the Long Island Railroad Company trans-
porting the following described Live Stock, either by the head or
by the carload, at reduced prices, upon the shipper assuming certain
risks as specified below: I do hereby release said company from
all liability for injuries which the animals, or either of them, may

receive in consequence of any of them being wild, vicious, unruly, weak, escaping or maiming themselves or each other, or in consequence of heat, suffocation or other ill effects of being crowded either upon cars or in yards, or on account of being injured by the burning of hay, straw or any other material used for feeding the stock, or in any other way; and also for all loss or damage which may be sustained by reason of any delay in the loading, transportation or delivery, or in consequence of the insecurity of the cars.

" And it is agreed that the shipper will load, transship and unload said stock at his own risk, the laborers of the Company assisting under his direction. Also, that if said stock is carried by the carload this Company is not responsible for the number or weight thereof, but only to deliver such animals as arrive at the place of destination. It is also agreed that the person in charge of the stock who accepts a pass (which is only issued to man in charge of stock in carloads) to obtain a ride free does so at his own risk of personal injury from any and every cause."

The ticket issued to the coachman was as follows:

" LONG ISLAND RAILROAD.
" LIVE STOCK TICKET.

" Good for one Continuous Passage from Southampton, N. Y., to L. I. City, only when used by P. B. WYCKOFF, Servant, and when accompanying Live Stock in accordance with conditions on the back of this ticket.

" 868.    H. M. SMITH, G. T. M.

" CONDITIONS.

" This ticket is issued to enable the holder to accompany Live Stock shipped by P. B. WYCKOFF over the Long Island Railroad under a Special Contract with said Company and at a reduced rate. This ticket is accepted subject to the provisions of that contract, and the person accepting the same, whether the shipper or his agent, hereby assumes all risk of accidents and expressly agrees that the said Company shall not be liable for any injury to his person or his property under any circumstances whether of negligence by the agents of this Company or otherwise."

*William J. Kelly*, for the appellant.

*Dailey, Bell & Crane*, for the respondent.

Dykman, J.:

This is an appeal from a judgment entered upon a verdict in favor of the plaintiff and against the defendant after a trial at the Circuit, and also from an order denying a motion for a new trial upon the minutes of the court.   The case discloses the following facts:

On the 6th day of December, 1893, the plaintiff was in the employ of Dr. Wyckoff as a groom, and on that day was going from the summer residence of his employer at Southampton to Long Island City, upon the railroad of the defendant.   The plaintiff, in company with the coachman, Thomas Adcock, was to transport the horses of his employer with them on the train from Southampton, in what was known as a Wagner palace horse car.   About nine o'clock on the morning of December 6, 1893, Thomas Adcock, the coachman, went to the ticket office at Southampton to pay for the car, and he did pay for the car forty-eight dollars, which included Dr. Wyckoff's horses and carriage and two men in charge.   He asked the agent if that charge included everything, and was informed that it did.   He hired the whole car, which included everything, and the agent told him it included the fare of two men ; and he signed, as he says, at that time, the printed paper which he always signed for shipping, and, as appears on the cross-examination of the plaintiff, he supposed, and was informed by Adcock, that he, Adcock, had bought his ticket and paid his fare, so that when the plaintiff boarded the defendant's train at twelve o'clock, noon, with the horses, he supposed his fare had been paid by Adcock, who so informed him.   The time at which the train left Southampton for Long Island City was two o'clock in the afternoon, but for the convenience of the defendant the plaintiff, the coachman and the horses were taken on a train at twelve o'clock which stopped at Southampton, coming from Long Island City and proceeding easterly to Sag Harbor.

This, as was explained, was for the reason that it was easier to load horses and carriages on trains going east than trains going west, and also for the sake of saving time on the western trip.   The Wagner car into which the horses were placed had the usual car seats for passengers.   That car was taken to Sag Harbor on the twelve o'clock train going east and there switched upon a siding to be made part of the train going west, due at Southampton at two o'clock.

While this palace horse car was on this siding at Sag Harbor the train to which it was to be attached came back from the main track on to the switch and collided with great force with the car in which the horses were at that time, and inflicted the injuries upon the plaintiff for which this action is brought.

There is no denial of the collision or of the negligence from which it resulted. The defense to the action is that the plaintiff made a special contract with the defendant, whereby it was relieved from all liability in carrying the plaintiff, even for the negligence of its servants.

Upon that subject the trial judge charged the jury that " although this blank contract was made between Dr. Wyckoff and the railroad company (that is, between Dr. Wyckoff, through his agent Adcock, or whoever did it, and the railroad company), nevertheless, if this plaintiff did not know that in the contract there was any clause exempting the railroad company from liability to him for any negligence of the railroad company, if you find the plaintiff did not know it, and if you also find that he did not have the opportunity of knowing it, that it was not in any way called to his attention, that he was not put on inquiry sufficient to make you say that he should have known it, if he did not know it, the' exemption would not hold in favor of the railroad company, and the plaintiff would be able to recover.

" Traveling in this horse car, without having made any personal contract himself, it may well be that he knew or that he supposed, which I charge you would be the same thing, that Dr. Wyckoff had made some contract or provision for him. But I charge you that although riding as he was and knowing that Dr. Wyckoff must have done it, or presuming that he must have done it, which is the same thing, nevertheless, that in itself did not necessarily bring home to him the knowledge that in that contract which Dr. Wyckoff or somebody else had made for him or to cover his case, that did not necessarily bring home to him the knowledge that in that contract the negligence of the railroad company had been exempted, so that he could not recover for its negligence, because, gentlemen, the rule of law is that the company is liable for its negligence, and while I charge you that you can go to a railroad company and enter into a contract exempting it from any negligence if you see fit, never-

theless, the position that this plaintiff was in toward this company, riding on this road on that day, the fact that he knew or supposed that a contract had been made covering his case, did not necessarily carry home to him the knowledge that the railroad company had been exempted from the liability which the law casts upon it."

This charge was a correct exposition of the law applicable to the case, and gave the facts fairly to the jury, and, therefore, in view of the fact that the verdict was rendered by the jury in favor of the plaintiff, it must be assumed that the facts were found in accordance with the charge, and, therefore, that the plaintiff in this action was destitute of knowledge that any contract had been made exempting the railroad company from negligence toward him.

The jury, in obedience to the rules thus laid down, were the sole judges of the facts, and rendered a verdict in favor of the plaintiff. No principle of law has been violated, and the verdict is not excessive.

The judgment and order denying a new trial should be affirmed, with costs.

BROWN, P. J., and PRATT, J., concurred.

Judgment and order affirmed, with costs.