the exception in the deed from her did not operate to vest title thereto in him; nor was it shown upon the trial that the mother had subsequently conveyed such title to him. The evidence does show, however, that she made the exception at his request, and that he asserted his right to fish thereunder, and it is fair to assume that he exercised that right under license from her and by her authority and consent. This right for him she excepted from her conveyance, and while the plaintiff has the right to prohibit all others from fishing in the stream, there was expressly withheld from it through the mesne conveyances from the mother the right to prevent the defendant from so doing while he was acting under her, and hence no 'injunction could issue against him.

It might be added that undoubtedly the mother has no power to convey the right to fish to any other person than the defendant, and that the defendant himself has no right to convey such privilege to others, but can only exercise it himself.

For these reasons, I concur in an affirmance of the judgment.

---

### MARLATT v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. December 6, 1912.)

EVIDENCE (§ 122*)—ADMISSIBILITY OF EVIDENCE—DECLARATIONS—RES GESTÆ.

In an action by a drover, injured while in the caboose by being thrown against the end of the caboose by a severe jolt, claimed to have been due to the improper use of the air brake, statements of other drovers before the accident as to the manner in which the train was being handled by the engineer were not admissible, since it was not res gestæ, occurring before the accident, and the drovers were not in a position on the end of a train to tell how the engineer was using the air brake.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 339–350; Dec. Dig. § 122.*]

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Steuben County.

Action by Jonathan R. Marlatt against the Erie Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

F. A. Robbins, of Hornell, for appellant.
John W. Hollis, of Addison, for respondent.

LAMBERT, J. The action is in negligence, to recover for personal injuries sustained by the plaintiff, while he was riding in a caboose, at the rear end of one of defendant's fast freight trains, near Calicoon, N. Y.

The day preceding the accident, at the station of Greenwood, on the New York & Pennsylvania Railroad, the firm of Scott & Lewis partially loaded a car of live stock, and billed the same over that and the defendant railroad to Jersey City, in the state of New Jersey. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

car was then moved to Canisteo and into defendant's freight yards, where its loading was completed by one Wilson out of stock belonging to him. It was then moved by the defendant on towards its destination as a car shipped by Scott & Lewis.

It appears that both railroads had at least two rates for the carriage of live stock, the one of which was in excess of the other. Both were filed and published, as required by law. The higher rate was charged in such instances, as the carrier assumed entire responsibility for the care of the stock en route, while the lesser involved the furnishing of such care by the shipper. This car was shipped under the low tariff, and as a preliminary thereto the shippers were required to and did execute a printed form of contract, defining the rights and responsibilities of the parties. By such contract the care of the stock was imposed upon the shippers, and, as that involved the sending of an attendant with the stock, provision is therein made for the carrying of such person without charge for transportation. A clause is also included, by which the shippers indemnify the carrier from loss by way of injury to such attendant.

Upon the back of this contract is a printed form of release, to be signed by the attendant, in person. This release is sufficient in form to bar this action, if plaintiff is bound by its provisions.

At the time of this shipment, William Scott, one of the shippers, after signing the contract in the firm name, executed this release, in his own individual name, as the man to be in charge of this stock during its transportation. He did not, however, accompany the car at all. From Greenwood to Canisteo it had no attendant. At Canisteo the plaintiff, previously employed by the shippers and Wilson for such purpose, boarded the train as such attendant. He did not produce, and was not asked to exhibit, any authority for his presence. His oral statement that he was in charge of this stock was accepted as sufficient by the various conductors having the movement of this car in charge. There was minuted, upon the waybill accompanying this car, "Pass man in charge free." This was written on by the agent at Greenwood.

Plaintiff and other drovers occupied the caboose of this train, while same was in motion, attending to the wants of the stock at such times as the train was stopped. As the train approached Calicoon, it was observed that its progress was attended with a series of rough jolts. This was called to the attention of the conductor. It was intended to stop the train at Calicoon, and as it approached this station there was a sudden and severe jolt, sufficient to throw the plaintiff against the end of the caboose and cause the injuries of which he complains.

It first becomes important to determine plaintiff's status upon this train. By his complaint he has chosen to rely upon the contract for the shipment of this stock to establish his standing. He therefore receives no benefit by way of license or permission to ride. He asserts his status to be contractual, and he identifies the contract specifically. He does not claim to have been a party to that contract, in person; but he does assert that, by reason of the contract for his employment by the shippers, he acquires the benefits of their contract.

This contract contemplates the carriage of some attendant, and it is fairly to be said that it contemplates that the attendant may be some other person than the shipper. It does not identify the attendant in any manner. The release upon the back of the contract is clearly intended to be executed by the person actually accompanying the car, and no occasion arises for its use, unless the attendant is a different person than the shipper. The indemnity clause in the contract accomplishes all the purposes of the release, when shipper and attendant are the same person. By the contract and release, such release is made an essential element in the transaction. The lower freight charge is made dependent upon the shipper caring for the stock en route. Such care by the shipper rests upon the free transportation of the attendant; and such free transportation rests, in turn, upon the release from liability. In such manner the entire scheme is worked out, with a result advantageous to both shipper and carrier, and, involving, as it does, the carriage of the attendant upon trains and under circumstances not designed for the carriage of passengers, it cannot be so construed as to make the release a mere incident. It is an important and essential ingredient of the entire transaction.

Primarily, then, since plaintiff chooses to rely upon that contract to establish his standing, he must take the contract in its entirety, and cannot select therefrom such portions as meet his needs, while discarding therefrom such as tend to defeat his recovery. In acquiring the contractual standing of Scott, or of Scott & Lewis, he must step into their shoes (so to speak), as otherwise there could not be said to have been that meeting of the minds of the parties essential to sustain every contract.

To escape this conclusion, the plaintiff has adduced evidence to show that he never had personal knowledge that the release was signed by any one, and further, that both carriers had, upon other occasions, permitted the carriage of live stock and attendants, without requiring the execution of the release. By such evidence it is sought to establish a custom sufficiently in vogue to be deemed a part of the contract, thus effecting a modification of the contract by the elimination of the release therefrom. Without passing upon the sufficiency of this evidence to establish such a custom (and of its sufficiency we have grave doubt), we do not deem this an instance where such a custom could be given the desired effect. Custom is to be resorted to, in the construction of contracts, only in cases of doubt or ambiguity as to their meaning. It is not available to create such doubt or ambiguity. It is true that the carrier might waive such provision made for its benefit, in specific instances; but such waiver in one or a series of instances could not effect its right to insist upon its observance in other instances. To so hold would be to defeat the right of contract of the parties. There is no room for surmise that this release was executed by Scott as the result of fraud or misrepresentation by the carrier or in ignorance of its contents. He says that he was asked to and did execute it. He had been a frequent shipper and was familiar with this form of contract. His assumption of the right to send a different person with this car than the one who had executed the release was unauthorized and unwarranted. The carrier had the right

to accept or reject the attendant offered. That right was a valuable one. Its liabilities for injuries would be greater in some instances than in others. It had a right to say who should go, and in this case it insisted on that right, when it demanded and received this release, signed by Scott. It had such right, independently of any custom or usage that might have obtained in the past. The proof of custom was wholly immaterial.

We do not deem the foregoing to be at variance with those cases cited by respondent as to plaintiff's status upon this train. In Brewer v. New York, Lake Erie & Western Railroad Co., 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647, plaintiff's intestate was an express messenger, and was killed while in the performance of his duties. It appeared that the express company, by which he was employed, had executed a contract with the defendant, whereby it undertook to release the railroad from liability such as was sought to be enforced in that action. This was without the knowledge of the intestate, and he was never asked to execute any release. The railroad chose to rely upon the release of the employer, without requiring the messengers to personally release. It was there held that the release afforded no defense.

In Coppock v. Long Island Railroad Co., 89 Hun, 186, 34 N. Y. Supp. 1039, the plaintiff was a groom, in attendance upon horses in an express car. His employer had executed a contract which purported to relieve the carrier from liability to him. He was in ignorance of such contract, and there was no attempt by the carrier to procure a release from the person in charge. It was relying solely upon the release by the employer of plaintiff.

In Porter v. New York, Lake Erie & Western Railroad Company, 59 Hun, 177, 13 N. Y. Supp. 491, the plaintiff was injured while in attendance upon a car load of stock. He was never required to release, although he was designated in the contract by name as the person to accompany the car. His employer had contracted to release the railroad from liability to him.

In each of those cases, the release was held ineffectual as a defense. But it is to be noted that in none of them was there any effort by the carrier to procure a release from the person so being carried. In each the release of the employer was alone sought, and it was held that, without knowledge on the part of the plaintiff that the release was made, it did not affect his status. The situation here presented is different. Here the carrier insisted upon a release from the attendant in person and procured one to be signed. It had then taken all due steps to protect itself, and its liability could not be increased by the unauthorized substitution of another attendant.

There is further reason why this judgment and order must be reversed. The theory of negligence, upon which plaintiff relies, is that the sudden and severe jolt which occasioned the injuries was caused by too abrupt and severe application of the air brakes by the engineer. The rule of care required of defendant was stated by the trial court to be ordinary care and prudence. Such a rule excludes the application of the rule of res ipsa loquitur. The burden was therefore upon the plaintiff to show negligent operation of the air brake. To

meet this burden, the evidence goes no further than that the jolt was unusually severe, and the description of the accident. While it might, perhaps, have safely left this question to rest upon plaintiff's evidence, yet the defendant has advanced a theory, as to the cause of this accident, which is fully as reasonable as that of the plaintiff. The engineer testified that when he undertook to apply the air brake, to make the stop at Calicoon, although he only made a slight reduction, the brakes suddenly jumped to emergency without being so applied by him. By this evidence, and that of other witnesses, it was shown that such a result frequently is attendant upon what is known as a sticky triple valve upon some car in the train. The sticking of the valve on the car and its sudden giving way effects a sudden and extreme reduction through the entire air line, almost instantly applying all the brakes and resulting in a sudden and violent stoppage of the train. The jury was instructed that, if this accident resulted from a sticky triple valve, there could be no recovery. Such instructions were correct, as such a valve is not to be discovered by inspection. But the jury was permitted to speculate as to which of the two causes produced the accident. There was not the slightest evidence to lead them in the one direction rather than the other, and therefore the plaintiff did not meet the burden of proof upon this issue.

There was also error in the admission of evidence. Upon the negligence issue, plaintiff was permitted to prove, over the objection and exception of the defendant, conversations between the drovers in the caboose and the conductor of the train relative to the uneven and rough movement of the train preceding the accident. This talk included statements by the drovers, or some of them, to the effect that, if it continued, they would all be killed, while others remarked as to its effect upon the live stock and the injury to be expected. It also included the statement, by the conductor, that such violence must be the result of the improper working of the air brake.

None of this talk can be justified as evidence here, as being a part of the res gestæ. It preceded the accident. The statements by the drovers could scarcely be claimed to furnish any evidence of negligence on the part of the defendant. These men were not in a situation to know anything of the manner in which the engineer applied the air brake. The engineer was far ahead of them and at the front end of the train. Nor was their statement permissible as bringing the attention of the conductor to the uneven progress and movement of the train. The fact that they did call it to his attention had been proven prior to the introduction of this conversation in evidence. Such conversations have been held improper to establish any negligence and do not have such a tendency. Kuperschmidt v. Met. St. Ry. Co., 47 Misc. Rep. 352, 94 N. Y. Supp. 17; Ehrhard v. Met. St. Ry. Co., 69 App. Div. 124, 74 N. Y. Supp. 551.

As to the declarations of the conductor, it suffices to say that his employment to act as such did not vest him with authority to make declarations for or against the defendant, upon which negligence might be predicated. This evidence was improper, and its admission was error.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, FOOTE, J., in result in separate memorandum, except KRUSE and ROBSON, JJ., who dissent in an opinion by KRUSE, J.

FOOTE, J. (concurring). I concur in result, on the ground that it was error to admit in evidence the declarations of Smith and De Vere, made prior to the accident, as to the manner in which the train was being handled by the engineer.

KRUSE, J. (dissenting). The plaintiff, who was in charge of a car load of live stock, was riding in the caboose of the train, and was thrown from his seat through the negligent operation of the train, as he claims, and hurt. He had been employed by the shippers to take charge of and care for the stock, and was rightfully upon the train. He paid no fare himself, and none was exacted by the conductors. Their authority for passing him was a notation upon the waybill to "pass man in charge free." The stock was being shipped under what is known as the "uniform live stock contract," which contemplates that the shipper shall send a caretaker with the stock, and provides that the caretaker shall be carried without charge other than what is paid for the transportation of the stock, and that the shipper will indemnify the carrier and connecting carriers against claims for personal injuries sustained by the caretaker, whether caused by the negligence of the carriers or otherwise. It also evidently contemplates that the man in charge shall execute an instrument whereby he voluntarily assumes all risk of accident, and releases and discharges the carriers from all claims for personal injury or damage sustained by him, whether caused by the negligence of the carriers or otherwise.

It is contended upon the part of the defendant that under the contract of shipment the defendant is exempted from liability for the injuries so sustained by the plaintiff. That would be so if the plaintiff had been a party to the contract, or had signed the release. But he was neither a shipper nor did he execute the release. The release was executed by William Scott, one of the shippers. The plaintiff had no knowledge of the terms of the contract under which the stock was being shipped or of the release. He did not represent himself to be Scott, and the conductors who passed him did not understand him to be Scott, and he did not deceive the railroad company as to his identity or otherwise. Indeed, the first conductor upon the train knew the plaintiff, and although the notations upon other waybills for passing the man in charge of stock had sometimes, upon previous occasions, designated the man in charge by name, no such designation was made upon the waybill for the stock of which the plaintiff had charge upon this occasion. There is nothing in the evidence showing that the plaintiff, either under the terms of his contract of employment with the shippers or under any arrangement with the railroad company, assumed directly or indirectly the risk of injury to him resulting from the carelessness of the carrier in transporting him upon the train in question.

Furthermore, as will be seen, the release did not assume to bind him or any one else but Scott. And even if it had, I do not think the shippers could do so without his knowledge or consent. Brewer v. N. Y., Lake Erie & W. R. R. Co., 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647. In Baltimore & Ohio Southwestern Ry. Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, where the railroad company was held not liable for injuries sustained by an express messenger, who had himself voluntarily assumed the risk of accident, the case of Brewer v. N. Y., Lake Erie & W. R. R. Co., supra, was referred to. The doctrine of the Brewer Case was not disapproved, but the case was distinguished by the fact that in the Brewer Case the messenger had no knowledge or information of the contract between the companies and was not himself a party to the agreement to exempt the railroad company.

Furthermore, it appears that upon other occasions the carriers had permitted caretakers to go with shipments of live stock without executing any release. The trial judge charged, as requested by defendant's counsel, that in the absence of any custom or practice to the contrary Scott alone was entitled to go with the car of stock in question as the caretaker or attendant thereof, but refused to charge that the evidence was insufficient to establish a general practice or custom upon the part of the initial carrier which would operate as a waiver of that part of the agreement or of the rule requiring it to be carried out. It is possible that the evidence was insufficient to establish a general custom to that effect. But, whether it was or not, I think, under the rule of the Brewer Case, the plaintiff's right of recovery is not affected thereby.

2. As regards the negligence of the defendant, I think the evidence was sufficient to make that question one of fact. The trial court limited the grounds of negligence to the careless management of the train, and instructed the jury that, if the accident resulted from a sticky air valve, the plaintiff could not recover. An inspection of the train was made before the accident and immediately after, and no sticky air valve was discovered. The jerky and jolting condition of the train before the accident, as well as the fact that the air did not come on suddenly at the time when the train was stopped, and other surrounding circumstances, made it fairly a case for the jury to determine whether the sudden and abrupt stopping of the train was the result of a sticky air valve, as the defendant claims, or the negligent operation of the train by the engineer, as the plaintiff claims; and, the jury having found for the plaintiff upon that question, I think their finding should not be disturbed.

3. As regards the complaints made to the conductor of the operation of the train immediately before the accident, I think they were competent, at least upon the question of notice. There was no suggestion upon the part of the defendant that the evidence should be limited in any way, and, if it was competent for any purpose, it was properly received.

I think the judgment and order should be affirmed, with costs.

ROBSON, J., concurs.