FILED
08/12/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2022

## TENNESSEE HOMES v. DALTON L. WELCH, ET AL.

Appeal from the Circuit Court for Coffee County
No. 2020-CV-47049      William A. Lockhart, Judge
———————————————————

### No. M2021-01383-COA-R3-CV
———————————————————

This appeal is a landlord-tenant dispute involving issues of liquidated damages and material breach of contract. The landlord filed a civil warrant in general sessions court to recover an early termination fee and other related fees pursuant to the parties' lease agreement. The general sessions court entered a judgment in favor of the landlord finding that the early termination fee was reasonable and was not a penalty. The tenants appealed the judgment to the circuit court. The circuit court also entered a judgment in favor of the landlord finding that the early termination fee was reasonable and was not a penalty and that the landlord did not breach the lease agreement. The tenants appeal. We affirm as modified and remand to the circuit court for calculation of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KRISTI M. DAVIS, JJ., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellants, Dalton L. Welch and Alexis S. Clark.

James D. Lane, II, Tullahoma, Tennessee, for the appellee, Tennessee Homes.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

In March 2020, Dalton L. Welch and Alexis S. Clark (collectively, "Tenants") entered into a "Tennessee Residential Lease Agreement" with Tennessee Homes

("Landlord").[1]  The lease agreement consisted of 33 paragraphs and included six addenda regarding the following: insurance; pest control; wi-fi end user acceptance agreement; zero tolerance for criminal activity; pets; and a statement of facts.  The lease agreement was for a 12-month term and required monthly rent in the amount of $865.00.  Additionally, the lease agreement contained the following relevant provisions:

> 3. **DAMAGE DEPOSIT:**  Upon the due execution of this Agreement, Tenant shall deposit with Landlord the sum of [$500.00] receipt of which is hereby acknowledged by Landlord, as security for any damage caused to the Premises during the term hereof.  Such deposit shall be returned to Tenant, without interest, and less any set off for damages to the Premises upon the termination of this Agreement. . . . .
>
> . . .
>
> 5. **CONDITION OF PREMISES:**  Tenant stipulates, represents and warrants that Tenant has examined the Premises, and that they are at the time of this Lease in good order, repair, and in safe, clean and tenantable condition.  Any damaged or non-working items on the Premises will be noted on the attached and signed 'Check-in Sheet'.
>
> . . .
>
> 7. **ALTERATIONS AND IMPROVEMENT:**  Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of Landlord.  Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.
>
> . . .
>
> 13. **INSPECTION OF PREMISES:**  Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon.  And for the purposes of making any repairs, additions, or alterations as may be deemed appropriate by Landlord for the preservation of the Premises of the building. . . . .

---

[1] Ernest G. Hobbs, Jr. was the owner and property manager for Tennessee Homes, and we also refer to him as "Landlord" in this opinion.

. . .

21. **EARLY TERMINATION FEES:** If this agreement terminates for nonpayment or other listed defaults, other than a Landlord approved written termination from Tenant, Tenant agrees to pay [$1,000.00], in addition to all other fees, charges, and damages allowed, as an Early Termination Fee (hereinafter referred to as 'Early Termination Fee'). The Early Termination Fee is not a penalty, but rather a charge to compensate Landlord for Tenant's failure to satisfy the terms of the agreement.

. . .

24. **FEES:** Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rent or gaining possession of the Premises, Tenant agrees to pay all expenses incurred, including a reasonable attorney's fee. . . . .

. . .

27. **SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entitles, or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by Law.

After entering into the lease agreement, Tenants moved in to the apartment. Pursuant to paragraph 5 of the lease agreement, Tenants completed a check-in sheet and determined that, non-figuratively, everything but the kitchen sink was in acceptable condition at the time. They submitted a work order requesting that maintenance inspect the leaky sink. Both the check-in form and the work order contained notations that the sink was checked and/or repaired. However, according to Mr. Welch, he eventually had to fix the sink himself after waiting for help to no avail. Shortly after they moved in, Tenants also discovered that the refrigerator was not working properly, but this issue was not noted on the check-in form.

In June 2020, Mr. Welch drafted a letter expressing his and Ms. Clark's dissatisfaction with the apartment and their desire to terminate the lease. He described other issues such as the defective wi-fi and having to replace the refrigerator, and complained about the lack of response they received in regard to these issues. He also suggested that they should not have to pay anything further due to their trouble and that they would be out of the apartment by the end of June. In response to this letter, Landlord agreed to let them out of their lease, but he informed them that, per paragraph 21 of the

- 3 -

lease agreement, they would have to pay the early termination fee of $1,000. In a text message, Mr. Welch acknowledged that he would pay the early termination fee but disagreed to pay any other fees beyond that. At the end of June, Tenants moved out of the apartment as agreed but did not pay the early termination fee. Landlord was able to relet the apartment to another individual on July 9, 2020.

As a result of Tenants' failure to pay the early termination fee, Landlord filed a civil warrant in general sessions court pursuant to paragraph 24 of the lease agreement. Landlord sought to recover the "early termination fee of $1,000.00," as well as the "remaining monthly rent until property is relet at $865.00 (8 months) per month; damages of $250.00; courts costs of $145.50; service fees of $75.00; [and] attorney's fees of $600.00 for a total of $8,490.50."[2] Tenants disputed whether they caused any physical damage to the apartment, but an affidavit was filed by Landlord claiming otherwise. They also argued that the early termination fee was unenforceable because it was a penalty, which was against public policy. The general sessions court held a trial on the matter in September 2020. The court entered judgment in favor of Landlord finding that the early termination fee was reasonable and was not a penalty. The court held that Landlord was entitled to a total of $1,870.50, less the $500.00 security deposit. The judgment for $1,870.50 included the following fees: $1,000.00 for the early termination fee; $600.00 for attorney's fees; $145.50 for court costs; $75.00 for service fees; and $50.00 for damages. Thereafter, Tenants timely appealed the judgment to the circuit court.

The circuit court ultimately held a de novo trial on the matter in October 2021. Tenants raised an allegation not previously tried regarding a material breach by Landlord. After closing arguments, the court made an oral ruling in favor of Landlord and stated that Landlord could submit an affidavit for attorney's fees. Counsel for Landlord subsequently submitted an affidavit. On October 22, 2021, the circuit court then entered a judgment detailing its findings. Like the general sessions court, the court found that the early termination fee was reasonable and was not a penalty. Furthermore, the court found that Landlord did not breach the lease agreement. Therefore, the court held that Landlord was entitled to judgment and calculated the judgment amount as follows:

| | |
|---|---|
| Rent: | $252.00 |
| Damages: | $50.00 |
| Early Termination Fee: | $1,000.00 |
| Subtotal: | $1,302.00 |

---

[2] Tenants signed the twelve-month lease in March 2020 and vacated the premises at the end of June, so they remained on the property for approximately four months. Landlord filed a civil warrant requesting rent in the amount of $865/month for the remaining eight months of the lease. The civil warrant was filed on same day that the property was relet.

| | |
|---|---|
| Security Deposit: | <u>-$500.00</u> |
| Subtotal: | $802.00 |
| Refrigerator: | <u>-$300.00</u> |
| Subtotal: | $502.00 |
| Attorney's Fees (General Sessions Court): | $145.50 |
| Service Fee (General Sessions Court): | $75.00 |
| Subtotal: | $1,322.50 |
| Attorney's Fees for [Circuit Court] Appeal: | $1,650.00 |
| Total Judgment in the Amount of | $3,695.00[3] |

Afterward, Tenants timely filed an appeal with this Court.

Tenants filed a statement of the proceedings, to which Landlord filed an objection. After a hearing on the matter, the circuit court entered an order finding that all aspects of the statement of proceedings were consistent with what had transpired, with the exception of two clarifications concerning the lease agreement and the text messages between the parties. The court explained that the lease agreement was properly submitted into evidence without objection, the lease agreement was a binding contract entered into between the parties, Tenants only argued that the early termination fee was unenforceable, and the remainder of the lease agreement was enforceable. Additionally, the court explained that the text messages between the parties were admitted into evidence over the objection of Tenants, the objection was toward the relevance of the text messages and was overruled, and the text messages did not form a contract or amend the lease agreement.

Upon review of the record, this Court found that it did not have subject matter jurisdiction because the circuit court's order from October 22, 2021, was not a final judgment pursuant to Tennessee Rule of Civil Procedure 58. Therefore, we ordered Tenants to obtain entry of a final judgment in the circuit court. A supplemental record was subsequently filed with this Court which contained a final order that complied with Tennessee Rule of Civil Procedure 58.

## II.    ISSUES PRESENTED

---

[3] In its calculation of the judgment amount, the circuit court's math fails to add up, which Tenants point out in their appellate brief. Landlord attempts to clarify this discrepancy in its appellate brief, explaining that the court inadvertently left out the actual attorney's fees of $600 from general sessions court and that the $145.50 represents the court costs, i.e., the filing fees for the civil warrant. Even assuming arguendo that this Court accepts Landlord's explanation, the math still falls short of the total judgment amount of $3,695.00.

Tenants present the following issues for review on appeal, which we have reordered and slightly restated:

1. Whether Landlord materially breached the contract first, thereby justifying Tenants moving out early;
2. Whether the early termination fee was a valid and enforceable liquidated damages clause; and
3. Whether the final judgment improperly totaled the amount of damages from the circuit court's oral ruling and/or improperly awarded attorney's fee without evidence.

In addition to these issues, Landlord presents an issue of whether he is entitled to recover attorney's fees incurred as a result of this appeal. For the following reasons, we affirm and remand to the circuit court for further proceedings consistent with this opinion.

### III.  STANDARD OF REVIEW

This is an appeal of a trial court's decision made from a bench trial. "In an appeal from a bench trial, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise." *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 467 (Tenn. Ct. App. 2016) (quoting *Foster-Henderson v. Memphis Health Ctr., Inc.*, 479 S.W.3d 214, 223 (Tenn. Ct. App. 2015)). Furthermore, "great weight is given to the trial court's determinations of credibility." *Pless v. Pless*, 603 S.W.3d 753, 770 (Tenn. Ct. App. 2019) (citing *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997)). Therefore, we give "great weight to a trial court's factual findings that rest on determinations of credibility." *Id.* (quoting *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citations omitted)). "Although we also review the trial court's resolution on a question of law de novo, no presumption of correctness attaches to the trial court's legal conclusions." *Hi-Speed, Inc.*, 536 S.W.3d at 467 (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)).

### IV.  DISCUSSION

#### A. Material Breach

We begin our discussion by first addressing the issue concerning material breach. Tenants contend that Landlord was the first party to materially breach the contract, i.e., the lease agreement. The circuit court found that Landlord did not breach the lease agreement. The court concluded that there were minor issues that Tenants experienced, but those issues did not constitute a breach of the lease agreement. We agree.

It is well established that a party must establish three elements in order to succeed

on a breach of contract claim: "'(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of the contract.'" *Fitness & Ready Meals LLC v. Eat Well Nashville LLC*, No. M2021-00105-COA-R3-CV, 2022 WL 601073, at *3 (Tenn. Ct. App. Mar. 1, 2022) (quoting *Bynum v. Sampson*, 605 S.W.3d 173, 180 (Tenn. Ct. App. 2020) (citation omitted)). The parties' dispute as to this particular issue pertains to the second element—a nonperformance that amounts to breach of the lease agreement. This Court has held that "in order for a contractual breach to be sufficient to relieve the non-breaching party of its contractual obligations, the initial breach must be 'material.'" *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016) (quoting *DePasquale v. Chamberlain*, 282 S.W.3d 47, 53 (Tenn. Ct. App. 2008) (citation omitted)). If the breach "'was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach.'" *Id.* (quoting *Anil Constr. Inc. v. McCollum*, No. W2014-01979-COA-R3-CV, 2015 WL 4274109, at *12 (Tenn. Ct. App. July 15, 2015) (*no perm. app. filed*) (citation omitted)). When determining the materiality of a party's breach, it is the "clear trend" of Tennessee courts "to apply the test found in section 241 of the Restatement (Second) of Contracts." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 822-23 (Tenn. Ct. App. 2009); *see, e.g.*, *State v. Howington*, 907 S.W.2d 403, 410-411 (Tenn. 1995); *DePasquale*, 282 S.W.3d at 53-54; *Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997). That test includes the following factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981). However, when analyzing the materiality of a breach, we have held that sometimes "these factors are only marginally helpful in analyzing the materiality." *M & M Elec. Contractor, Inc.*, 529 S.W.3d at 423.

In order to resolve this issue of first material breach, we examine the issues that Tenants experienced during their time at the apartment. There were three specific issues that Tenants experienced regarding the sink, the refrigerator, and the wi-fi. Landlord testified that he observed a problem with the sink when the lease was first entered into in March 2020, but the records he provided demonstrated that he sent someone to fix it just a few days later. He explained that he did not receive any further complaints from Tenants about the sink until June 2020. Mr. Welch testified that he informed someone about the sink, but after about two weeks, he was unaware if anyone had come to fix it and decided to fix it himself. He agreed that it was conceivable that someone might have come to fix it while he was away, but he did not believe that someone should have entered his apartment without his permission.

As for the refrigerator, Landlord testified that he was contacted and told that the refrigerator was not working properly shortly after Tenants had moved in. He told Tenants to load up the refrigerator with ice in order to keep the food cool temporarily because he did not have anyone to fix it at the time. He learned a few days later, however, that Tenants bought their own refrigerator from a relative. He admitted that the refrigerator was not working and that he contracted to provide working appliances, but he maintained that he was unaware of the defective refrigerator when he entered into the contract. Mr. Welch testified that no one offered to replace the refrigerator at the time he communicated it was not working, so after about three days he bought a new one from his mother. He stated that Landlord never gave him any credit toward his rent for the expense and that he left this refrigerator when they moved out of the apartment. At the time of his testimony, he was unable to remember whether he paid $300 or $400 for the refrigerator. His letter from June 2020 reflected that he paid $500 for it.

With respect to the wi-fi, Landlord testified that he was never informed of any problems with the wi-fi until June 2020. Tenants complained that it did not work or that it worked only intermittently. As a result, Landlord asked maintenance to look into the matter and checked with other tenants to see whether they were having any problems, but he received no other complaints. Mr. Welch testified that the wi-fi "never really worked," but he admitted that he did not complain about it until later because of his prior complaints regarding the sink and the refrigerator. Contrary to Landlord's testimony, Mr. Welch stated that other tenants expressed to him that their wi-fi did not work either. Ms. Clark testified that there was never an offer to improve the wi-fi or reduce their rent due to its defectiveness.

For a breach of contract claim, we have held that "[w]hether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact." *A & P Excavating and Materials, LLC v. Geiger*, 622 S.W.3d 237, 248 (Tenn. Ct. App. 2020) (quoting *Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009)). Even assuming that these issues amounted to a breach, we find that the evidence does not preponderate against the circuit court's conclusion that the issues were minor, and

therefore not material. Landlord was initially aware of the issue with the sink and attempted to resolve it expeditiously by sending someone to fix it. After doing so, he was unaware that any problem with the sink remained until he was informed by Tenants in June 2020. Mr. Welch admitted that someone might have come to fix the sink while he was away, and the documents in the record demonstrate that someone did on March 17, 2020. He did not believe that someone should have entered the apartment without his permission, but paragraph 13 of the parties' lease agreement clearly gave Landlord, and his agents, the right to enter the apartment for the purposes of inspection and repair. Landlord was unaware of the defective refrigerator at the time the parties entered into the lease agreement. After he was informed of the issue, he offered a temporary solution to Tenants until he could find someone to fix the refrigerator. After only a few days, however, Tenants decided to replace the refrigerator themselves. They replaced the refrigerator without any prior written consent of Landlord, which was in contravention of paragraph 7 of the parties' lease agreement. Finally, both Landlord and Mr. Welch testified that the issue with the wi-fi was not brought up until June 2020, which was shortly before Tenants decided to move out of the apartment. Landlord then had someone look into the issue and checked with other tenants to determine whether they were having issues with the wi-fi, but he received no other complaints. In the addendum regarding the wi-fi, Tenants acknowledged that the wi-fi "may not be uninterrupted or error-free."

While we agree that the situation for Tenants was not ideal, the extent to which they had been deprived of the benefit they reasonably expected did not rise to the level of material. *See* Restatement (Second) of Contracts § 241(a) (1981). In regard to all three issues mentioned above, Landlord attempted, or offered to attempt, to resolve them. From our review of the record, Landlord acted reasonably and in good faith when these issues were brought to his attention. *See* Restatement (Second) of Contracts § 241(e) (1981). Additionally, it was likely that he would have cured these issues if Tenants had communicated further about the sink, had waited more than a few days to allow him to resolve the issue with the refrigerator, and had brought the issue with the wi-fi to his attention sooner. *See* Restatement (Second) of Contracts § 241(d) (1981). We sympathize with Tenants—no one wants to move into an apartment and encounter problems, irrespective of the materiality. Nevertheless, we find that these issues were "slight or minor, as opposed to material or substantial," and therefore Tenants were not relieved of their duty of performance. *M & M Elec. Contractor, Inc.*, 529 S.W.3d at 423 (quoting *Anil Constr. Inc.*, 2015 WL 4274109, at \*12 (*no perm. app. filed*) (citation omitted)). As such, we conclude Landlord did not materially breach the lease agreement first.

### B.  Liquidated Damages

While the parties differ on whether the lease agreement's provision regarding an early termination fee is enforceable, both of them appear to agree that the lease on its face provides for the potential collection of an early termination fee in addition to "other fees, charges, and damages." Tenants contend that the provision in the lease agreement

providing for an early termination fee was unenforceable. To support this contention, they argue that the early termination fee was unenforceable because, when viewed prospectively, damages were not difficult to ascertain and the early termination fee was not a reasonable estimate of damages. They also argue that the early termination fee was a penalty because it was cumulative to damages rather than a substitute for damages. Additionally, they claim that the lease agreement's language stating the early termination fee was "not a penalty" is irrelevant and that Landlord had "less-than-zero damages" without the early termination fee. In response to these arguments, Landlord contends that the early termination fee was reasonable, bore a direct relationship with the monthly rental amount, and was not a penalty. At trial, Landlord testified that the early termination fee applied in addition to all other damages because he had other business expenses, besides lost rent and physical damage, which the fee helped subsidize. In order to address this issue, we review the Tennessee case law on liquidated damages.

### i.      *Generally*

Initially, although not technically raised as a separate issue, we determine the finding that the "early termination fee" is, on its face, a purported liquidated damages clause to be integral to our review. *See Keck v. Meek*, No. E2017-01465-COA-R3-CV, 2018 WL 3199220, at *7 (Tenn. Ct. App. June 28, 2018) (determining that whether the trial court properly found that the buyers exercised their option to purchase the subject property was integral to its review, although it was not raised as a separate issue by the sellers). The lease agreement did not refer to the early termination fee as "liquidated damages." The provision reads as follows:

> 21. **EARLY TERMINATION FEES:** If this agreement terminates for nonpayment or other listed defaults, other than a Landlord approved written termination from Tenant, Tenant agrees to pay [$1,000.00], in addition to all other fees, charges, and damages allowed, as an Early Termination Fee (hereinafter referred to as 'Early Termination Fee'). The Early Termination Fee is not a penalty, but rather a charge to compensate Landlord for Tenant's failure to satisfy the terms of the agreement.

However, we note that "the parties' choice of language does not determine the nature of the provision." *Anesthesia Med. Grp., P.C. v. Buras*, No. M2004-01599-COA-R3-CV, 2006 WL 2737829, at *2 (Tenn. Ct. App. Sept. 25, 2006) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 97 (Tenn. 1999)). Our Supreme Court has explained that "[a] contractual provision need not explicitly include the term 'liquidated damages' to constitute a liquidated damages provision." *Guiliano*, 995 S.W.2d at 97. Rather, "it is the task of the Court and not of the parties to decide the true nature of the sum payable." P.S. Atiyah, *An Introduction to the Law of Contract* 316-17 (3d ed. 1981). "If the contract is for a matter of uncertain value, and a reasonable sum is fixed by the parties as the amount to be paid on breach, that sum, *though actually called a 'penalty' in the instrument*, is recoverable as

- 10 -

liquidated damages if the obligation be not in fact performed." *Ill. Cent. R. Co. v. So. Seating & Cabinet Co.*, 58 S.W. 303, 305 (Tenn. 1900) (citations omitted) (emphasis added). Concomitantly, if the sum is "unreasonable . . . , the stipulation, *however named*, is a penalty, and only actual damages, to be ascertained in the ordinary way, can be recovered." *Id.* at 306 (emphasis added).

Although it is not explicitly stated in the lease agreement, the provision was clearly intended to be a stipulation for liquidated damages. *See Buras*, 2006 WL 2737829, at *2 ("The term 'liquidated damages' means a sum agreed upon by contracting parties at the time they enter into their contract, to be paid as compensation for damages suffered by one party in the event that the other breaches the contract.") (citing *V.L. Nicholson v. Transcon Inv.*, 595 S.W.2d 474, 484 (Tenn. 1980)). We can conclude so because the clear language of the provision made the fee due or conditioned upon termination "for nonpayment or other listed defaults" and referred to the fee as a "charge to compensate Landlord for Tenant's failure to satisfy the terms of the agreement." *See id.* (concluding that the provision was clearly one for liquidated damages because the clear language of the contract's provision made the payment due or conditioned upon a breach, or, specifically, an "event of default.") (citing *Guiliano*, 995 S.W.2d at 97).

Therefore, as a preliminary matter, we find that the circuit court properly analyzed the "early termination fee" as a provision for liquidated damages. The decisive question is whether the liquidated damages provision at issue is enforceable.

### ii.    Enforceability[4]

We have found that "[t]he beginning point for any current day discussion of liquidated damages is the Tennessee Supreme Court's holding in *Guiliano* . . . ." *Id.* at *6. Our Supreme Court discussed the issue of liquidated damages at length in *Guiliano* and determined that the "prospective approach" best addresses the recovery of liquidated damages. *Guiliano*, 995 S.W.2d at 100; *see Allmand v. Pavletic*, 292 S.W.3d 618, 630-31 (Tenn. 2009) (reaffirming and applying the principles of liquidated damages from *Guiliano*); *Hensley v. Cocke Farmer's Coop.*, No. E2014-01775-COA-R3-CV, 2015 WL

---

[4] If we find that the liquidated damages provision is unenforceable, the lease agreement contains a severability provision in paragraph 27, which would allow the remainder of the lease agreement to still be enforced. We note that:

> Even if the [liquidated damages] provision is an unenforceable penalty, or where the clause is invalid for other reasons, the injured party will not forfeit all rights to contract enforcement, but may still seek its actual demonstrated damages. Where the liquidated damages clause is unenforceable, and no bar exists to a damages remedy, this situation might actually benefit the plaintiff where it can prove a loss, because the actual damages could exceed liquidated damages.

22 Tenn. Prac. Contract Law & Prac. § 12:37 (footnote omitted).

5121142, at *5-6 (Tenn. Ct. App. Aug. 31, 2015), *perm. app. denied* (Tenn. Ct. App. Jan. 21, 2016) (applying the principles of liquidated damages from *Guiliano* in a case involving a contractual provision for severance pay). The Court explained that "there are two important interests at issue: the freedom of parties to bargain for and to agree upon terms," such as a term providing for liquidated damages, "and the limitations set by public policy." *Id.* "Generally, the parties to a contract are free to agree upon liquidated damages and upon other terms that may not seem desirable or pleasant to outside observers." *Id.*; *see Chapman Drug Co. v. Chapman*, 341 S.W.2d 392, 398 (Tenn. 1960); 22 Am. Jur. 2d *Damages* § 686 (1988). In that respect, we "should not interfere in the contract, but should carry out the intentions of the parties and the terms bargained for in the contract, unless those terms violate public policy." *Id.*; *see McKay v. Louisville & N.R. Co.*, 182 S.W. 874, 875 (Tenn. 1916) (citing *Baltimore & Ohio S.W. Ry. Co. v. Voight*, 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560 (1900)).

In the context of parties agreeing to a liquidated damages provision, the Court further explained that:

> [I]t is generally presumed that [the parties] considered the certainty of liquidated damages to be preferable to the risk of proving actual damages in the event of a breach. 22 Am. Jur. 2d *Damages* § 726.
>
> Liquidated damages permit the parties to allocate business and litigation risks and often serve as part of the contractual bargain. In addition, they lend certainty to the contractual agreement and allow the parties to resolve defaults and other related disputes efficiently, when actual damages are impossible or difficult to measure. C.T. McCormick, *Handbook on the Law of Damages* § 157 (1935).

*Id.* Thus, under the prospective approach, we "focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation." *Id.* (footnote omitted). The Court explained that those circumstances include:

> [W]hether the liquidated sum was a reasonable estimate of potential damages and whether actual damages were indeterminable or difficult to measure at the time the parties entered into the contract. If the provision satisfies those factors and reflects the parties' intentions to compensate in the event of a breach, then the provision will be upheld as a reasonable agreement for liquidated damages. However, if the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy.

*Id.* at 100-01 (internal citation omitted). Following this approach, the circuit court properly determined that the provision regarding the early termination fee must be viewed

prospectively, rather than retrospectively, at the time the parties entered into the lease agreement.

A liquidated damages provision is "subject to close scrutiny because of the public policy against forfeitures." *Bachour v. Mason*, No. M2012-00092-COA-R3-CV, 2013 WL 2395027, at *4 (Tenn. Ct. App. May 30, 2013) (citations omitted); *Anesthesia Med. Grp., P.C. v. Chandler*, No. M2005-00034-COA-R3-CV, 2007 WL 412323, at *9 n.7 (Tenn. Ct. App. Feb. 6, 2007) (citations omitted); *Buras*, 2006 WL 2737829, at *7 n. 10 (citations omitted). The viewpoint from which we are to analyze a liquidated damages provision is described in both *Chandler* and *Buras* as follows:

> The law continues to be that a liquidated damages provision will be upheld if the amount of such damages bears a reasonable relationship to the amount of actual damages that would likely be sustained in the event of a breach and if the actual amount of damages would be difficult to determine or prove. Conversely, liquidated damages will not be upheld if they are deemed to constitute a penalty against the breaching party rather than a reasonable way to guarantee compensation for damages to the non-breaching party. *Guiliano*, 995 S.W.2d at 98.

*Chandler*, 2007 WL 412323, at *9; *Buras*, 2006 WL 2737829, at *7 (footnote omitted). The circuit court found that the early termination fee was reasonable and not a penalty. Yet, the court did not elaborate on why the early termination fee was reasonable and did not make a finding that the actual amount of damages would have been difficult to determine or prove.

When viewing the provision prospectively, it was a "reasonable prediction" that Landlord could sustain damages if Tenants did not complete their 12-month term. *Guiliano*, 995 S.W.2d at 99; *see Buras*, 2006 WL 2737829, at *7 (explaining that "at the time the contract was signed it was clearly foreseeable, and in fact likely, that [the plaintiff] would suffer damages if [the defendant] did not complete his three-year employment commitment"). Tenants point out in their reply brief that the apartment could have been filled in one day hypothetically, and the lost rent would have only been approximately $29.00 ($865.00 monthly rent ÷ 30 days). Likewise, we point out that the apartment could have not been filled during the remainder of the 12-month term, and the lost rent would have been approximately $6,920.00 ($865.00 monthly rent × 8 months). Moreover, if Tenants had moved out earlier than June 2020, the lost rent would have been even greater if the apartment could not have been filled. The $1,000.00 early termination fee was not disproportionate in Landlord's favor; in fact, it was favorable to Tenants. *See Buras*, 2006 WL 2737829, at *7 (explaining that the liquidated damages were not disproportionate in plaintiff's favor, but were favorable to the defendant). When Tenants did move out, Landlord was able to relet the apartment to another individual on July 9, 2020 and only sustained approximately $252.00 in lost rent. Nevertheless, "the amount of actual damages

- 13 -

at the time of breach is of little or no significance to the recovery of liquidated damages" under the prospective approach. *Guiliano*, 995 S.W.2d at 99. The early termination fee in the amount of $1,000.00 was a reasonable estimate of the damages Landlord could sustain at time the parties entered into the lease agreement.

Still, "the actual amount of damages" must have been "difficult to determine or prove" in order for a liquidated damages provision to be enforceable. *Chandler*, 2007 WL 412323, at *9; *Buras*, 2006 WL 2737829, at *7. In *Buras*, we found that the actual damages could not be accurately predicted at the time of the contract formation because, among other things, it could not be ascertained how long it would take to find a replacement for the defendant who did not complete his three-year employment commitment. *Buras*, 2006 WL 2737829, at *7. Similarly, at the time the parties entered into the lease agreement in this case, it would have been difficult to determine the following: (1) if and when Tenants would breach by moving out and (2) if and when Landlord would be able to find a new tenant to replace them. We are unable to find any Tennessee case law specifically addressing the characterization of such fees in residential lease agreements.[5] However, the Missouri Court of Appeals has interpreted a similar lease provision to be a valid liquidated damages clause. In *Paragon Grp. Inc. v. Ampleman*, 878 S.W.2d 878, 881 (Mo. Ct. App. 1994), the Court examined a provision from a lease agreement, which provided a $920.00 termination fee equal to the amount of two month's rent. Nine months remained on the lease when the tenant breached the lease, and the Court determined that that $920.00 was not an unreasonable estimate of the damages the landlord would incur upon breach of a $5,520.00 lease when nine months remained in the lease term. *Id.* (citations omitted). Additionally, the Court disagreed with the tenant's contention that the amount of damages would not be difficult to ascertain, explaining that "Missouri courts have consistently held actual damages for breach of real estate sales contracts are uncertain and difficult to prove." *Id.* (citations omitted). The Court further explained as follows:

> Like real estate contracts, it is difficult to measure damages upon breach of a lease by the tenant. While the amount of rent due under the lease is easily measurable, it is hard to say how long the apartment will be vacant or how much time, expense and energy will be expended to re-let the premises. It is also difficult to estimate whether or how many prospective long-term tenants were turned away while the leasing tenant occupied the premises or how this damaged the landlord. Contrary to Tenant's assertions, it is even harder to measure the damages of a large apartment complex where marketing and leasing activities are occurring daily. In that situation, putting a price on

---

[5] We do note that the *Keck* case involved a dispute concerning a "Tennessee Residential Lease Agreement," in which this Court addressed an issue regarding liquidated damages, but it pertained to the transfer of real property. *Keck*, 2018 WL 3199220, at *1, 15. The sellers in that case relied in part on a provision for "liquidated damages" of the parties' real estate contract, which provided that if the buyers failed "to perform the covenants herein contained within the time specified," the sellers would be able to retain "as liquidated damages all sums which have theretofore been paid." *Id.* at *15.

- 14 -

Landlord's damages is difficult at best. Where the difficulty of loss is great, significant latitude is allowed in setting the amount of anticipated damages.

*Id.* (internal citations omitted). Accordingly, the Court in *Ampleman* found that the trial court did not err in finding the clause in question was a valid liquidated damages clause. Like the Missouri Court of Appeals, we emphasize that "it is difficult to measure damages upon breach of a lease by the tenant." *Id.* Furthermore, "[w]hile the amount of rent due under the lease is easily measurable," it is difficult to ascertain, among other things, "how long the apartment will be vacant or how much time, expense and energy will be expended to re-let the premises." *Id.* The damages Landlord would potentially suffer, if Tenants did not complete the 12-month term, were "indeterminable or difficult to ascertain **at the time of contract formation**." *Chandler*, 2007 WL 412323, at \*10 (quoting Guiliano, 995 S.W.2d at 99) (emphasis added).

As such, we find that at the time the parties entered into the lease agreement, the early termination fee of $1,000.00 was a reasonable estimate of potential damages and such damages were difficult to ascertain at the time the parties entered into the lease agreement.

### iii.    Scope of Liquidated Damages

Though we have analyzed the liquidated damages provision from the viewpoint described in *Chandler* and *Buras*, our discussion does not end here. "If [a] contract contains no criteria for determining the stipulated liquidated damages, these exactions will be unenforceable." 22 Tenn. Prac. Contract Law & Prac. § 12:36; *see Cummins v. Vaughn*, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995) (explaining that the parties eliminated the basis for recovery of liquidated damages when they obliterated the criteria for the amount of liquidated damages). The provision in the lease agreement contained such criteria, stating that it was "a charge to compensate Landlord for Tenant[s'] failure to satisfy the terms of the agreement." Thus, the $1,000.00 early termination fee was an estimation of the anticipated actual damages Landlord would suffer for Tenants' failure to satisfy the lease agreement. The following discussion on this issue, which has been called a "Have Cake and Eat It" clause,[6] is instructive:

> Questions sometimes arise on whether a party in the same action for breach may obtain both liquidated and conventional damages. Along with obtaining liquidated damages, a party can exercise its conventional right to recover other damages proximately related to a breach of the contract, but only where they are outside the scope of the liquidated damages clause. On the other hand, a party may not elect between its right to recover liquidated damages versus actual damages for losses covered by a liquidated damages clause, except as permitted by the contract.

---

[6] J. Calamari & J. Perillo, *The Law of Contracts*, § 14.32 (4th ed. 1998).

- 15 -

22 Tenn. Prac. Contract Law & Prac. § 12:36 (footnotes omitted). The liquidated damages provision stated that Tenants agreed to pay the early termination fee "in addition to all other fees, charges, and damages allowed . . . ." Therefore, Landlord could recover "other fees, charges, and damages" that were not contemplated by the liquidated damages provision. As we have explained, "[t]he liquidated damage clauses of contracts do not cover damages flowing from 'events' not contemplated by the parties at the time they are signed 'unless the contract expressly provides that damages other than those enumerated . . . shall not be recovered.'" *Loveday v. Barnes*, No. 03A01-9201CV0030, 1992 WL 136176, at *4 (Tenn. Ct. App. June 19, 1992) (citing 22 Am. Jur. 2d *Damages* § 728).

By that same token, Landlord cannot have his cake and eat it too. "If a party elects the remedy of liquidated damages, he or she cannot generally seek additional damages for the same breach."[7] *Wayne Boykin & Assocs. v. Tinsely*, No. M2006-02465-COA-R3-CV, 2008 WL 820512, at *7 (Tenn. Ct. App. Mar. 26, 2008); *see G.H. Swope Bldg. Corp v. Horton*, 338 S.W.2d 556, 568-69 (Tenn. 1960) ("Having retained the $250, the owner has received all the damages he is entitled to receive under the accepted offer to buy. As the Court views it, to hold otherwise would be to ignore the accepted meaning of the expression 'liquidated damages.'"). The very nature of a liquidated damages provision is to settle in advance the "anticipated actual damages" that might arise "from a future breach." 22 Am. Jur. 2d *Damages* § 506 (footnote omitted). "The effect of a clause for stipulated damages in a contract is to substitute the agreed amount for the actual damages resulting from a breach of the contract . . . . A valid liquidated damages clause precludes recovery for actual damages; both actual damages and liquidated damages cannot be awarded." 22 Am. Jur. 2d *Damages* § 535 (footnotes omitted).

Here, it is evident that the parties contemplated the $1,000.00 early termination fee to be a reasonable estimate of the lost rent and related damages that Landlord would potentially suffer in light of a breach by Tenants. Consequently, we determine that the early termination fee was meant to compensate Landlord for the lost rent, and the lost rent is not recoverable by Landlord.[8] Therefore, to the extent that the circuit court awarded the

---

[7] This Court has also briefly discussed this issue of "double recovery" in a case involving a breach of a construction contract, though we did not reach the substance of the issue. *Airline Const. Inc. v. Barr*, 807 S.W.2d 247, 259-60 (Tenn. Ct. App. 1990). In *Barr*, the plaintiff alleged that the award of liquidated damages was a penalty because the defendant was also awarded lost profits under an oral agreement between the parties. *Id.* at 260. However, we ultimately concluded that the issue was moot because we determined that that the admission of evidence surrounding the oral agreement violated the parol evidence rule. *Id.*

[8] We have noted that a breach of contract claim for unpaid rent may be "antithetical" to a claim that liquidated damages are proper under the same contract. *Keck*, 2018 WL 3199220, at *15 n.5. In the *Keck* case, which involved the transfer of real property, we found that the liquidated damages provision was unenforceable under the circumstances. *Id.* at *15. In this case, we conclude that Landlord may not recover both liquidated damages and actual damages in the form of lost rent, but, unlike the *Keck* case, we have found that the liquidated damages provision is enforceable under these circumstances.

- 16 -

$252.00 in lost rent, the total judgment amount should be reduced by that amount.[9]

### iv.    Intent

Lastly, we note that Tenants initialed the liquidated damages provision in the lease agreement demonstrating that they agreed to it and were aware of it. They signed the addendum regarding the statement of facts and initialed the statement: "I/We understand and agree there is an **early termination fee** as stated in the lease agreement[.]" Furthermore, just before moving out, Mr. Welch acknowledged through a text message in June 2020 that he would pay the early termination fee "like it says in the lease." At the time the parties entered into the lease agreement, and even at the time the parties were anticipating a breach through their correspondence in June 2020, they intended for the early termination fee to resolve Tenants' default efficiently, when actual damages were impossible or difficult to measure. *Guiliano*, 995 S.W.2d at 100 (citing C.T. McCormick, *Handbook on the Law of Damages* § 157 (1935).

Accordingly, we conclude that the early termination fee, as a liquidated damages provision, was valid and enforceable. Enforcing this provision "gives effect to the original intentions of the parties and furthers the goals and purposes of stipulating in advance to potential damages." *Buras*, 2006 WL 2737829, at *8. However, as previously discussed, Landlord may not recover the actual damages of $252.00 in the form of lost rent. As such, the total judgment amount should be reduced by $252.00.

### C.  Final Judgment Amount

### i.    Calculation

Tenants' final issue concerns the calculation of the final judgment amount and the award of attorney's fees. They state in their appellate brief, "the math on the final judgment simply does not add up." After struggling with the math provided in the circuit court's judgment, we agree. Moreover, Landlord admits in his appellate brief that the math was "incorrect" and a certain fee was "omitted by mistake." Landlord attempts to clarify the discrepancies in his appellate brief, explaining that the court inadvertently left out the

---

[9] We note here that the lease agreement contained a separate provision concerning the security deposit, and, incidentally, any damages to the apartment. The deposit was intended to be "security for any damage caused to the Premises during the term hereof." Additionally, the provision stated that "such deposit shall be returned to Tenant, without interest, and less any set off for damages to the Premises upon the termination of this Agreement." In light of this separate provision, we determine that the damages to the apartment were not contemplated by the liquidated damages provision. Furthermore, the early termination fee was recoverable "in addition to all other fees, charges, and damages allowed," and recovery of damages to the apartment were permitted because they were provided for elsewhere in the lease agreement. As such, pursuant to the security deposit provision, the circuit court properly found that the $500.00 deposit should be returned to Tenants less the $50.00 for damages to the apartment.

actual attorney's fees of $600.00 from general sessions court and that the $145.50 represents the court costs, i.e., the filing fees for the civil warrant. It is evident that this explanation solves the discrepancy of how the court reached the subtotal of $1,322.50:

| | |
|---|---|
| Rent: | $252.00 |
| Damages: | $50.00 |
| Early Termination Fee: | $1,000.00 |
| Subtotal: | $1,302.00 |
| Security Deposit: | -$500.00 |
| Subtotal: | $802.00 |
| Refrigerator: | -$300.00 |
| Subtotal: | $502.00 |
| [Court Cost's] | [$145.50] |
| Attorney's Fees (General Sessions Court): | [$600.00] |
| Service Fee (General Sessions Court): | $75.00 |
| Subtotal: | $1,322.50 |

Regardless of this explanation, the math still falls $722.50 short of the total judgment amount of $3,695.00:

| | |
|---|---|
| Subtotal: | $1,322.50 |
| Attorney's Fees for [Circuit Court] Appeal: | $1,650.00 |
| Total Judgment in the Amount of | $3,695.00 |

In light of these mathematical discrepancies, we remand this issue to the circuit court to determine the correct amount for the total judgment to be awarded to Landlord. *See St. John-Parker v. Parker*, 638 S.W.3d 624, 649 (Tenn. Ct. App. 2020) (remanding to the trial court for an inadvertent omission of discretionary cost from its final judgment). We also reiterate that Landlord may not recover the actual damages of $252.00 in the form of lost rent because that amount was contemplated by the liquidated damages provision. On remand, the correct amount for the total judgment to be awarded to Landlord should be reduced by $252.00. However, Landlord may recover "all other fees, charges, and damages" that were not contemplated by the liquidated damages provision.

ii.       *Reasonable Attorney's Fees*

Tenants also argue that attorney's fees should not be awarded at all without sufficient evidence to assess the reasonableness of the fees. The lease agreement contained language providing for attorney's fees as follows: "Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rents or gaining possession of the Premises, Tenant agrees to pay all expenses incurred, including a reasonable attorney's fee." After trial, counsel for Landlord submitted an affidavit, stating in pertinent part, "My current hourly rate for creditor clients is $250.00/hour. However, I currently represent the Plaintiff in this matter and charge an hourly rate of $150.00/hour." Counsel for Landlord did not include the number of hours or an estimated amount of attorney's fees incurred. In its judgment, the circuit court found that Landlord was entitled to a judgment of attorney's fees pursuant to paragraph 24 of the lease agreement. The court found that Landlord was entitled to $1,650.00 in attorney's fees for the proceedings in circuit court, but, as discussed above, the court's calculation of the total judgment inadvertently omitted the $600.00 attorney's fees for the proceedings in general sessions court.

Tenants concede in their appellate brief that the record suggests the attorney's fees from general sessions court were $600.00.[10] Similar to the previous issue on the calculation of the total judgment, Landlord explains how the court reached the amount of attorney's fees incurred. He explains that the amount of attorney's fees contained in the court's judgment reflected that attorney's fees from the circuit court were a total of $1,650.00. Therefore, he states that this amount, when divided by the hourly rate of $150.00, disclosed that the amount of time expended was 11 hours. In regard to this issue, we have explained that:

> Where an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined. *Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). Obviously, the burden of proof on the question of what is a reasonable fee in any case is upon the plaintiff, and plaintiff should be in a position to tender such proof. *Id.* However, a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be. *Id.* The trial judge may feel that the proceedings which he or she has heard have sufficiently acquainted him or her with the appropriate factors to make a proper award of an attorney's fee without proof or opinions of

---

[10] The circuit court's judgment notes that the attorney's fees from general sessions court were $600.00 when recounting the general sessions court's judgment. The general sessions court's judgment found that Landlord was entitled to attorney's fees in the amount of $600.00. Landlord also references the $600.00 fee in its trial brief.

- 19 -

other lawyers. *Kahn v. Kahn*, 756 S.W.2d 685, 696-97 (Tenn. 1988). Therefore, reversal of a fee award is not required merely because the record does not contain proof establishing the reasonableness of the fee. *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002). Should a dispute arise as to the reasonableness of the fee awarded, then in the absence of any proof on the issue of reasonableness, it is incumbent upon the party challenging the fee to pursue the correction of that error in the trial court by insisting upon a hearing on that issue, or to convince the appellate courts that he was denied the opportunity to do so through no fault of his own. *Id.* (citing *Wilson Mgmt. Co.*, 745 S.W.2d at 873); *Kahn*, 756 S.W.2d at 697. Absent a request for a hearing by the party dissatisfied by the award, a trial court is not required to entertain proof as to the reasonableness of the amount of attorney's fees awarded. *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *15 (Tenn. Ct. App. W.S. Feb. 17, 2005).

*Malibu Equestrian Est., Inc. v. Sequatchie Concrete Serv., Inc.*, No. M2005-02954-COA-R3-CV, 2007 WL 2200171, at *7 (Tenn. Ct. App. July 30, 2007).

Tenants did not request a hearing with the circuit court expressing their dissatisfaction with the award of attorney's fees. Therefore, the circuit court was not "required to entertain proof as to the reasonableness of the amount of the attorney's fees awarded." *Id.* (citing *Richards*, 2005 WL 396373, at *15). Given that Tenants failed to pursue any correction of the award of attorney's fees in circuit court, they must convince this Court that they were denied the opportunity to do so through no fault of their own. *Id.* (citing *Kline*, 69 S.W.3d at 210). In their appellate brief, they argue that neither the final judgment nor the attorney's fees affidavit were served upon them prior to entry of judgment. Counsel for Tenants argues that he did not even see the attorney's fees affidavit at all until he acquired the appellate record from this Court. Additionally, both the final judgment and the attorney's fees affidavit were missing a proper certificate of service. Counsel admits that, conceivably, he had some obligation to object to these errors, but argues that there was no opportunity to do so.

Tenants contend that they were denied the opportunity to challenge the award of attorney's fees, but after the circuit court's oral ruling, they were on notice that Landlord would be filing an affidavit for attorney's fees. Therefore, we find that Tenants were not denied the opportunity to challenge the attorney's fees. Despite Tenants' arguments, we find that the circuit court was capable of adjudging the value of the attorney's services. *See id.* at *8 ("Having overseen the proceedings below, the trial court was capable of adjudging the value of the attorney's services."). Furthermore, we have reviewed the record and conclude that the $1,650.00 award of attorney's fees was reasonable. The attorney's fees affidavit demonstrated that counsel for Landlord charged $150.00/hour, and the $1,650.00 award of attorney's fees shows that he was compensated for 11 hours of services. We find no error in the circuit court's handling of this issue.

### D. Appellate Attorney's Fees

Landlord presents an additional issue requesting attorney's fees for this appeal. The parties' lease agreement contained language providing for reasonable attorney's fees: "Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rent or gaining possession of the Premises, Tenant agrees to pay all expenses incurred, including a reasonable attorney's fee."

In Tennessee, we have "long followed the 'American Rule' with regard to attorney's fees." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). Under the American Rule, "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Id.* (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005); *John Khol & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998))). When an agreement exists between parties that entitles the prevailing party to recover attorney's fees, "[o]ur courts long have observed at the trial court level that parties are contractually entitled to recover their reasonable attorney's fees . . . ." *Id.* at 478; *see, e.g, Seals v. Life Invs. Ins. Co. of Am.*, No. M2002-01753-COA-R3-CV, 2003 WL 23093844, at \*4 (Tenn. Ct. App. Dec. 30, 2003); *Hosier v. Crye-Leike Com., Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at \*6 (Tenn. Ct. App. July 17, 2001). Our Supreme Court has stated that this observation is also true at the appellate court level and explained its reasoning as follows:

> Absent fraud, mistake, or some other defect, our courts are required to interpret contracts as written, giving the language used a natural meaning. *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009). This axiomatic rule does not change or lose its force because the parties to an agreement are before an appellate court. Indeed, one of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves. *Dubois v. Gentry*, 182 Tenn. 103, 184 S.W.2d 369, 371 (1945); *see also Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) ("The courts, of course, are precluded from creating a new contract for the parties.").

*Id.* Following this reasoning, the Court concluded that our appellate courts "do not have discretion to deny an award of fees mandated by a valid and enforceable agreement between the parties . . . ." *Id.* at 479. Therefore, if the parties' lease agreement provided for attorney's fees under certain circumstances, that provision must be enforced.

As mentioned before, the parties' lease agreement contained language providing for "a reasonable attorney's fee" if it became "necessary for Landlord to employ an attorney to enforce any of the conditions or covenants" of the agreement.[11]  There is a valid and enforceable lease agreement which contains language providing for "a reasonable attorney's fee."  Landlord initiated this lawsuit in general sessions court when it became "necessary for [him] to employ an attorney to enforce" the liquidated damages clause of the lease agreement.  Tenants appealed the general sessions court's decision and the circuit court's decision, both of which awarded judgment in favor of Landlord, and Landlord was forced to defend his award.  The defense of those judgments qualifies as "enforc[ing] any of the conditions or covenants" of the lease agreement.  Therefore, we conclude that the parties' lease agreement entitles Landlord to an award of reasonable attorney's fees for this appeal.

As such, we conclude that Landlord is entitled to an award of reasonable attorney's fees incurred before this Court.  We grant Landlord's request for an award of reasonable attorney's fees on appeal and remand the case to the circuit court for a determination of the appropriate amount of those fees.

## V.   CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court in regard to the issues of material breach of contract and the enforceability of the early termination fee.  We affirm the award of damages to Landlord.  However, we remand for the circuit court to determine the correct amount for the total judgment to be awarded to Landlord and to reduce the total judgment amount by $252.00 to exclude the lost rent awarded.  We also remand the case to the circuit court for a determination of the appropriate amount of attorney's fees to be awarded to Landlord for this appeal.  Costs of this appeal are taxed to the appellants, Dalton L. Welch and Alexis S. Clark, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[11] There were two Tennessee cases involving a lease agreement that employed similar language, which we found instructive in our analysis of this issue. *See Country Mile, LLC v. Cameron Props.*, No. M2017-01771-COA-R3-CV, at *28 (Tenn. Ct. App. Mar. 13, 2019); *Keck*, 2018 WL 3199220, at *2.